**Robert CLARK, an individual, and A.D.A. Access Today, a non-profit Pennsylvania Corporation, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**BURGER KING CORPORATION and Dime–Mor II, Inc., Defendants.**

Civil Action No. 02–0246(JEI).

United States District Court,
D. New Jersey.

April 4, 2003.

take an analysis under the more demanding ''legal certainty'' standard.

Brodsky & Smith, LLC, by Evan J. Smith, Cherry Hill, NJ, for Plaintiffs.

W. Barry Blum, Deputy General Counsel, Burger King Corporation, Genovese Joblove & Battista, PA, by Jonathan E. Perlman, Chad K. Lang, Miami, FL, Capehart & Scatchard, PA, by John H. Geaney, Mount Laurel, NJ, for Defendant, Burger King Corporation.

Baron, Riefberg & Ward, A Professional Corporation, by Barbara E. Riefberg, Esq., Voorhees, NJ, for Defendant, Dime-Mor II, Inc.

## OPINION

IRENAS, Senior District Judge.

Presently before this Court are the motions of Defendant, Burger King Corporation ("BKC"),[1] to (1) transfer venue in this dual class action, pursuant to 28 U.S.C. § 1404(a), to the Southern District of Florida, and to (2) dismiss Plaintiffs' amended complaint, pursuant to Rule 12 of the Federal Rules of Civil Procedure. On February 27, 2003, the Court heard oral argument on the instant motions. Since we find that (1) Defendant has not met its burden of showing that the District of New Jersey is an inconvenient forum; (2) Plaintiff, Clark, only has standing to assert his ADA claims as to restaurants he visited prior to filing the underlying action; (3) Plaintiff, ADAAT, lacks standing to sue in its own right; and (4) ADAAT does not have standing to assert ADA violations on behalf of its members, other than Clark, and it may be that ADAAT can cure this deficiency by amending the complaint, we will deny BKC's Motion to Transfer Venue and subsequently grant in part and deny in part BKC's Motion to Dismiss the Amended Complaint.

## I.

On January 22, 2002, Plaintiffs, Robert Clark ("Clark") and A.D.A. Access Today ("ADAAT"), brought the underlying putative national class action against BKC, all of BKC's franchises in the United States,[2] and Burger King franchisee, Dime-Mor II, Inc. ("Dime-Mor"),[3] alleging failure to pro-

---

1. BKC, a wholly owned subsidiary of Diageo, Plc ("Diageo"), based in London England, is a Florida corporation headquartered in Miami, Florida. In August of 2002, Diageo reported that it intended to sell BKC to an equity sponsor group comprised of Texas Pacific Group, Bain Capital and Goldman Sachs Capital Partners. On December 13, 2002, while this Court conducted its review of Defendant's instant motion, Diageo announced from London, that it had completed the sale of BKC to the equity sponsor group. *See Burger King* (visited Dec. 24, 2002) *<http://www.burgerking.com/CompanyInfo/online-pressroom/release. asp?id=403>*.

2. As of June 30, 2001, there were approximately eight thousand, two hundred and eighty-four (8,284) Burger King restaurants in the United States. Of these Burger King restaurants, seven thousand, seven hundred and fifty-one (7,751) are franchised, and five hundred, thirty-three (533) are company owned and operated. (Def. BKC's Mot. to Trans. Venue at 4).

3. Dime-Mor, a New Jersey corporation, operates one Burger King restaurant located in New Jersey.

vide sufficient access to persons with disabilities under Title III of the Americans with Disabilities Act ("ADA")[4] and various state disability statutes.

Plaintiffs claim that all Burger King restaurants in the United States deny disabled persons full accessibility as required by the ADA and various state laws. Plaintiffs seek to certify a plaintiff class consisting of all disabled persons residing throughout the United States and a subclass consisting of disabled persons residing in New Jersey,[5] California, Vermont, Arizona, Wisconsin, Illinois, Idaho, Ohio, Nevada, and Michigan. Plaintiffs also seek to certify a defendant class consisting of all owners/operators of Burger King restaurants throughout the United States, and a subclass consisting of all owners/operators of Burger King restaurants located in ten (10) states.[6] Plaintiffs claim that Defendants have discriminated against them by failing to remove certain architectural barriers or by otherwise denying Plaintiffs full and equal access to Defendants' goods, services, and programs at Defendants' facilities.

Defendant, BKC, requests that the Court (1) transfer this case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) and (2) dismiss Plaintiffs' amended complaint for lack of standing.

As to Defendant's transfer request, Defendant raises three main reasons as to why this case should be transferred. First, Defendant asserts that officers and employees of BKC, who have personal knowledge of BKC's activities, work and reside in Miami, Florida. Next, Defendant maintains that access to BKC's voluminous corporate documents and records, "if they exist," is clearly more convenient in Florida than in New Jersey. Finally, Defendant contends that more class members will reside in Florida, because Florida has significantly more Burger King restaurants than New Jersey.

As to Defendant's request that the Court dismiss Plaintiffs' amended complaint, Defendant asserts that because the amended complaint fails to cure the deficiencies of the initial complaint, the amended complaint must be dismissed because Plaintiffs lack standing, fail to state a valid claim, and make impermissible class allegations.

## II.

The Court will first turn its attention to Defendant's motion to transfer venue. "For the convenience of parties

---

**4.** Title III of the ADA provides in pertinent part that, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation...." *Parr v. L & L Drive–Inn Restaurant*, 96 F.Supp.2d 1065 (D.Haw. 2000); 42 U.S.C. § 12182(a). " 'Liability is imposed upon' any person who owns, leases (or leases to), or operates a place of public accommodation that discriminates against an individual on the basis of disability." *Parr*, 96 F.Supp.2d at 1070; *see* 42 U.S.C. § 12182(a).

**5.** Plaintiffs, who are Pennsylvania residents, seek to take advantage of the New Jersey Law Against Discrimination ("NJLAD"), which provides a private right of action for injunctive relief, compensatory damages, and punitive damages arising out of discrimination at places of public accommodation. N.J.S.A. § 10:1–2.

**6.** Defendant claims that less than three (3%) percent of all Burger King restaurants are located in New Jersey, (Def. BKC's Mot. to Trans. Venue at 4), and that there are twenty-five (25) times as many company owned Burger King restaurants located in Florida than in New Jersey. (Def. BKC's Mot. to Trans. Venue at 18). Defendant also claims that there are more Burger King restaurants located in Florida than in any other state.

and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 23, 108 S.Ct. 2239, 2240, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945 (1964)). The purpose of this section is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen*, 376 U.S. at 616, 84 S.Ct. at 809 (quoting *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26–27, 80 S.Ct. 1470, 1474–1475, 4 L.Ed.2d 1540 (1960)).

In deciding motions to transfer venue, "courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995). Rather, courts have considered "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3847 (2d ed.1986)).

The first step in a court's analysis of a transfer motion is to determine whether venue would be proper in the transferee district. If the first prong of the inquiry is satisfied, the court then should determine whether a transfer would be in the interests of justice. *Jumara*, 55 F.3d at 879. This Court notes that the party moving to transfer a case on grounds of inconvenience has the burden of showing that the existing forum is inconvenient. *Britamco Underwriters v. Raymond E. Wallace Productions, Inc.*, 56 F.Supp.2d 542, 545 (E.D.Pa.1999).

### III.

Thus, the threshold question under § 1404(a) is whether this action might have been brought in Florida. *Van Dusen*, 376 U.S. at 613, 84 S.Ct. at 808. Any civil action wherein jurisdiction is not found solely on the diversity of citizenship may be brought in a district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2); *Ayling v. Travelers Property Casualty Corp.*, No. 99–3243, 1999 WL 994403, at *2 (E.D.Pa. Oct.28, 1999). Similarly, as Plaintiffs assert, Defendant allegedly failed to provide sufficient access to a nationwide class of persons with disabilities under Title III of the ADA. Therefore, Plaintiffs could probably have brought this suit in almost any state in which BKC does business. Since, BKC does business in Florida, and the alleged violations occurred at BKC owned restaurants nationwide, the action could have been brought in the Southern District of Florida.

### IV.

Next, this Court must determine whether a transfer is in the interests of justice. According to the Third Circuit, in deciding a motion under § 1404(a), the Court must consider both the private and public interests affected by the transfer. *Jumara*, 55 F.3d at 879. The private interest factors to be considered in determining whether to transfer venue include: (1) the convenience and preference of the parties, including the plaintiff's choice of forum; (2) the convenience of witnesses; and (3) ac-

cess to books and records. *Jumara*, 55 F.3d at 879. In addition, the public interest factors that the Court should consider include: (1) practical considerations that would make the trial easy, expeditious, or inexpensive; (2) court congestion in each forum; (3) the location where the events at issue took place and the interest of the respective courts in deciding local controversies; (4) enforceability of any judgment; and (5) the judge's familiarity with the applicable law. *Id.* at 879–80 (citations omitted). However, the appellate court in *Jumara* noted "there is no definitive formula or list of the factors to consider." *Id.*

We begin our analysis by turning to the private interest factors. First, we will address Plaintiffs' choice of forum and the convenience and preference of the parties. "Plaintiffs' choice of forum is a paramount consideration that should not lightly be disturbed." *Ayling*, 1999 WL 994403, at *2; *See First Union National Bank v. United States*, 55 F.Supp.2d 331, 332 (E.D.Pa.1999); *Sovereign Bank, F.S.B. v. Rochester Community Savings Bank*, 907 F.Supp. 123, 126 (E.D.Pa.1995) (denying motion to transfer even though plaintiff filed in a district which was not his home nor the situs of events in contention). Unless the balance of inconvenience of the parties is strongly in favor of Defendant, Plaintiffs' choice of forum should prevail. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970). When considering a motion to transfer, a court may consider the "convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879.

In the instant case, Plaintiffs' physical and financial condition are much more limiting than Defendant's. Plaintiffs are a disabled individual who is permanently confined to a wheelchair and a non-profit advocacy group with limited resources. Defendant is an international corporation with annual revenues in excess of $8 billion. The fact that Defendant has substantially more resources than Plaintiffs should not be the sole reason for refusing a transfer, but an assessment of relative inconvenience weighs in Plaintiffs' favor. *See National Mortgage Network, Inc. v. Home Equity Centers, Inc.*, 683 F.Supp. 116, 119 (E.D.Pa.1988). Needless to say, although it is not clear how convenient Plaintiffs' chosen forum would be to other members of the putative class, Plaintiffs' physical and financial condition, as well as Plaintiffs' limited resources, are significantly more limiting than those of Defendant. Therefore, Plaintiffs' choice of forum and the convenience and preference of the parties factor weighs in favor of denying Defendant's motion.

Both parties argue that transporting their witnesses to the forum that each respectively opposes will be difficult.[7] However, unlike Defendant's witnesses, Plaintiffs' witnesses are more than likely to be disabled and have limited resources. Furthermore, Defendant argues that John Salmen ("Salmen") has agreed to appear voluntarily in the Southern District of Florida. Defendant likewise asserts that Dime–Mor has also consented to jurisdiction, for purposes of this action, in the Southern District of Florida. We find that Defendant's arguments, regarding Salmen and Dime–Mor consenting to travel to Florida but not to New Jersey, irrelevant. If Defendant chooses to use Salmen as an expert witness, BKC will be required to pay Salmen any fees he may charge for appearing on BKC's behalf. Defendant will also be required to produce Salmen for

---

7. Defendant argues that it will be difficult to transfer both, potential witnesses that work and reside in Florida, and Defendant's third party expert witness, John Salmen, who is located in Maryland. John Salmen is an independent contractor hired by BKC to consult with BKC on all ADA issues.

any required depositions. We need not elaborate any further, other than to point out that: (1) the United States District Courthouse in Camden, New Jersey is markedly closer to Baltimore than to Florida; and (2) Dime Mor, a New Jersey corporation, arguably could not find a more convenient forum. Therefore this factor weighs in favor of denying the transfer.

Regarding the respective parties' access to documents, Defendant states that certain internal BKC records and correspondence, and any policies, practices and procedures with regard to the ADA and Burger King restaurants, "if they exist," as well as any others of significance, are maintained by BKC at its headquarters in Miami, Florida. It is not clear to this Court how great of a burden it would be to move the necessary, yet hypothetical, documents to New Jersey. "[W]hen documents can be transported and/or easily photocopied, their location is entitled to little weight." *In re Laidlaw Securities Litigation,* 1991 WL 170837 at *2 (E.D.Pa. Aug.27, 1991). Furthermore, Plaintiffs do not argue that any of the relative documents are located in New Jersey and contend that they are ready and willing to pay reasonable copying and shipping costs for any such documents. Accordingly, this Court finds that this factor also weighs in favor of denying the transfer.

Turning to the practical considerations that make litigation easy, expeditious, or inexpensive, we will focus on whether there are related law suits pending elsewhere. "[I]t is in the interests of justice to permit suits involving the same parties and issues to proceed before one court and not simultaneously before two tribunals." *Job Haines Home for the Aged v. Young,* 936 F.Supp. 223, 233 (D.N.J.1996) (quoting *Ricoh Co. v. Honeywell, Inc.,* 817 F.Supp. 473, 487 (D.N.J.1993)). "To permit a situation in which two cases involving precise-ly the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co.,* 364 U.S. at 26, 80 S.Ct. at 1474. "A strong public policy favors bringing all such litigation together in one tribunal so that pretrial discovery may be conducted more efficiently, witnesses' time may be conserved, public and parties' litigation expenses may be reduced, and inconsistent results can be avoided." *Firmani v. Clarke,* 325 F.Supp. 689, 693 (D.Del.1971) (citing *Jacobs v. Tenney,* 316 F.Supp. 151, 169 (D.Del.1970)).

. First, it is important to note that there are no other cases involving precisely the same issues, simultaneously pending in another district court. Next, although Defendant argues that BKC will seek indemnification from other putative defendant class members in separate actions, and that such actions would only be proper in the Southern District of Florida due to the forum selection clause found in BKC's franchise agreements, issues of indemnification are not relevant to the instant case. Furthermore, no plaintiff or defendant class has yet been certified. We will therefore assign little weight, if any at all, to this factor.

Finally we must consider the remaining public interest factors. First, although courts may consider calendar congestion in ruling upon a § 1404(a) motion, relative congestion of the respective courts' dockets is not a factor of great importance in this type of motion. *Ayling,* 1999 WL 994403, at *5 (citing *Kisko v. Penn. Cent. Transp. Co.,* 408 F.Supp. 984 (M.D.Pa. 1976)). Accordingly, this factor does not weigh in favor of either party.

Next, this Court will focus on the location where the events in the underlying action took place. Plaintiffs allege that BKC, all of BKC's franchises in the Unit-

ed States, and Dime–Mor fail to provide sufficient access to persons with disabilities under Title III of the ADA and various state disability statutes. As to the BKC owned restaurants nationwide, Plaintiffs could probably have brought this suit in almost any state in which BKC does business. Next, as to BKC franchised restaurants, this factor presents a neutral consideration. Finally, as to the named Defendant, Dime–Mor, if Plaintiffs' allegations are true, the alleged acts that gave rise to this action occurred in the District of New Jersey and the case should be tried here. Therefore, these factors weigh in favor of denying the transfer.

In addition, with regard to the ability to enforce a judgment obtained in either forum, it is undisputed that a judgment obtained in either the District of New Jersey or the Southern District of Florida will be equally enforceable. Likewise, as to the familiarity of the trial judge with the applicable law, it is assumed that the federal courts in both the District of New Jersey and the Southern District of Florida are equally familiar with the legal principles necessary to resolve this case. Accordingly, these factors do not weigh in favor of either party.

Because the balancing of the private and public interests weighs heavily in favor of denying transfer, we will deny Defendant's motion to transfer this action to the Southern District of Florida.

## V.

We now turn our attention to Defendant's Motion to Dismiss the Amended Complaint. A court will grant a motion to dismiss a complaint under Rule 12(b) if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Sprague,* 2001 WL 1450606 at *1 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). There-

fore, Federal Rule of Civil Procedure 12(b)(6) provides this Court with the appropriate vehicle by which to dismiss a complaint "for failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6).

In considering a Rule 12(b)(6) motion, the court will accept as true all of the factual allegations contained in the complaint and any reasonable inferences that can be drawn therefrom. *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). Dismissal of claims under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Although the court must assume as true all facts alleged, "[i]t is not ... proper to assume that the [plaintiff] can prove any facts that it has not alleged." *Associated General Contractors of Calif., Inc., v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Also, when "[c]onfronted with [a 12(b)(6) ] motion, the court must review the allegations of *fact* contained in the complaint; for this purpose the court does not consider conclusory recitations of law." *Commonwealth of Pennsylvania v. Pepsi-Co, Inc.,* 836 F.2d 173, 179 (3d Cir.1988) (emphasis added).

## VI.

■ Defendant's instant motion asserts that Plaintiffs' amended complaint must be dismissed because Plaintiffs lack standing. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Article III, § 2 of the United States Constitution limits federal jurisdiction to "Cases" or "Controversies".

See *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The doctrines that have developed to elaborate the case or controversy requirement are "founded in concern about the proper-and properly limited-role of the courts in a democratic society." *Warth,* 422 U.S. at 498, 95 S.Ct. at 2205. This case or controversy limitation places the burden on the plaintiffs to allege that they have "such a personal stake in the outcome of the controversy as to warrant invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on [the plaintiffs'] behalf." *Paige v. Philadelphia Housing Authority,* No. 99–497, 2002 WL 500677, at *4 (E.D.Pa. March 28, 2002) (citing *Warth,* 422 U.S. at 498–99, 95 S.Ct. at 2205).

The doctrine of standing is made up of constitutional and prudential considerations. *See Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). "The prudential component of standing embraces, [j]udicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Parr v. L & L Drive–Inn Restaurant,* 96 F.Supp.2d 1065, 1077 (D.Haw.2000) (citing *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324).

"The core component of standing, however, is 'derived directly from the Constitution.'" *Id.* At an "irreducible constitutional level minimum," *Paige,* 2002 WL 500677, at *4, Plaintiffs must be able to demonstrate that they have (1) "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent,

not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Paige,* 2002 WL 500677, at *4–5 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180–181, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000)). *See Heir v. Delaware River Port Authority,* 218 F.Supp.2d 627, 639 fn. 9 (D.N.J.2002) (Irenas, J.) ("[F]ederal standing requires an allegation of a present or immediate injury in fact, where the party requesting standing has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens that presentation of issues.' There must be some causal connection between the asserted injury and the challenged action, and the injury must be of the type 'likely to be redressed by a favorable decision.'") (quoting *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985)); *see also, The Pitt News v. Fisher,* 215 F.3d 354, 359 (3d Cir.2000); *Doe v. National Bd. of Medical Examiners,* 199 F.3d 146, 152–153 (3d Cir.1999). The party invoking federal jurisdiction has the burden of satisfying these elements. *Lujan,* 504 U.S. at 561, 112 S.Ct. at 2130. If they fail to make the necessary allegations, they have no standing. *Warth,* 422 U.S. at 517–518, 95 S.Ct. at 2214–2215. "The rules of standing, whether as aspects of the Art. III case or controversy requirement or as reflections of prudential considerations defining and limiting the role of courts, are threshold determinations of the propriety of judicial intervention." *Id.* at 518, 95 S.Ct. 2197.

Furthermore, where, as in the instant case,[8] a plaintiff seeks prospective injunc-

---

**8.** Under Title III, only injuctive relief is available. 42 U.S.C. § 12188; *W.G. Nichols, Inc.* *v. D. Ferguson,* No.CIV.A. 01–834, 2002 WL 1335118, at *10 (E.D.Pa. June 7, 2002).

tive relief, he or she must demonstrate a "real and immediate threat" of injury in order to satisfy the "injury in fact" requirement. *W.G. Nichols, Inc. v. D. Ferguson,* No.CIV.A. 01–834, 2002 WL 1335118, at \*10 (E.D.Pa. June 7, 2002); *City of Los Angeles v. Lyons,* 461 U.S. 95, 103–104, 103 S.Ct. 1660, 1666, 75 L.Ed.2d 675 (1983). The Third Circuit has indicated that " '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . .' In order to obtain standing for prospective relief, the plaintiff must 'establish a real and immediate threat that he would again be [the victim of the allegedly unconstitutional practice].' " *W.G. Nichols, Inc.,* 2002 WL 1335118, at \*10 (quoting *Brown v. Fauver,* 819 F.2d 395, 400 (3d Cir.1987)). In *Lujan* the Court found that " 'some day' intentions—without any description of concrete plans, or indeed even any speculation of *when* the some day will be—do not support a finding of the 'actual or imminent' injury. . . ." *Lujan,* 504 U.S. at 564, 112 S.Ct. at 2138 (holding that intent to return was not sufficient to establish an "actual or imminent" injury).

The Third Circuit has held that these principles are equally applicable in the context of Title III of the ADA. *W.G. Nichols, Inc.,* 2002 WL 1335118, at \*10; *Doe,* 199 F.3d at 153 (holding that the injury complained of was actual and imminent where the plaintiff was "sure to" suffer the conduct that allegedly constituted disability based discrimination "absent an injunction"); *Shotz v. Cates,* 256 F.3d 1077, 1081 (11th Cir.2001); *Steger v. Franco, Inc.,* 228 F.3d 889, 892 (8th Cir.2000) (concluding that proof of an intent to return to the place of injury "some day" is insufficient to establish standing under Title III, and that a plaintiff must instead prove that

he or she "would visit the building in the imminent future" but for the failure to comply with the ADA).

## VII.

As to Plaintiff Clark's standing to pursue his claims we are limited to the "irreducible constitutional minimum of standing." *Doe,* 199 F.3d at 152 (citing *Lujan* 504 U.S. at 560, 112 S.Ct. at 2136). "[A]lthough Congress may expand the definition of what constitutes an injury, essentially by expanding the list of rights people enjoy, it may not eliminate the constitutional 'case or controversy' requirement." *Parr,* 96 F.Supp.2d at 1078 (citing *Hoepfl v. Barlow,* 906 F.Supp. 317, 323 (E.D.Va. 1995)) (finding no standing to sue for injunctive relief under the ADA). The "proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statute was violated." *Doe,* 199 F.3d at 153.

In the instant case, as in *Parr,* Clark's desire to patronize Defendant's restaurants free from discrimination is a cognizable interest for purposes of standing. *Parr,* 96 F.Supp.2d at 1079; *Hoepfl,* 906 F.Supp. at 322 ("[T]he right created and at issue here is the right to be free from discrimination in the enjoyment of public accommodations and services."). Since Clark, a paraplegic who requires a wheelchair, experienced discrimination at Burger King restaurants, we find that he has suffered a concrete injury as to restaurants he visited prior to filing the underlying action.[9]

However, in order to establish standing, Clark must also prove that his injury is actual or imminent. *Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136. "ADA Plaintiffs who seek prospective injunctive relief

---

**9.** Plaintiffs concede that Clark lacks standing to sue with regard to barriers unrelated to his own disability. (Pls.' Opp. Br. at 7.)

when they allege only past discrimination that is unlikely to be repeated have been denied constitutional standing," *Hoepfl*, 906 F.Supp. at 323, whereas concrete plans to return could demonstrate an "actual or imminent" injury. *Lujan*, 504 U.S. at 579, 112 S.Ct. at 2146 (Kennedy, J., concurring).

In the instant case, Clark's past patronage at certain Burger King restaurants supports a reasonable likelihood of future injury at these locations. *See Delil*, 1997 WL 714866, at \*4 (past visits to restaurant may support claim to sue for injunctive relief under ADA.) Based on the underlying complaint, and because the Burger King restaurants Clark visited are located within a reasonable distance from Clark's residence, Clark has clearly established a likelihood of future injury based on his reasonable desire to return to these particular restaurants.[10] Accordingly, based upon Clark's prior visits to Burger King restaurants, and his intent to return to these restaurants, we find that Clark has demonstrated a real and immediate threat of future injury, and has thus, satisfied the injury in fact requirement.

As to places Clark has yet to visit, absent any allegation that there exists (1) particular commonality of construction, or (2) that BKC implements a corporate policy violative of the ADA at Burger King restaurants, Clark clearly lacks standing.[11] Moreover, Clark fails to demonstrate an intent to return to, or a likelihood of future injury at, locations he has yet to visit, and thus, does not satisfy the injury in fact requirement to establish standing with respect to these restaurants.

As to the causation and redressability elements further necessary for Clark to establish standing, we find that because Clark has suffered no injury at Burger King restaurants he has yet to visit, we need not consider causation and redressability as to these places. It is logical that causation and redressability only exist for places Clark visited prior to filing the underlying action. "[T]here is ordinarily little question that the action or inaction [of the defendant] has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561–62, 112 S.Ct. at 2137. Clark alleges a direct injury as a result of Defendant having discriminated against him by failing to remove certain architectural barriers at Defendant's facilities, which is "traceable to the actions or inaction of Defendant because [the] injury occurred in a public accommodation under Defendant's operation and control." *Id.* Furthermore, since injunctive relief would include "an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities ...," 42 U.S.C. § 12188(a)(2), a favorable decision would redress the alleged injury suffered by Clark.

We find that Clark clearly has standing to assert ADA violations against Burger King restaurants he visited prior to filing the underlying action, but lacks standing with regard to places he plans to "some day" visit. Accordingly, we will deny De-

---

**10.** Since architectural barrier removal actions under the ADA are site specific, Clark only has standing with respect to restaurants where, prior to filing, he was subjected to discrimination on account of his particular disability.

**11.** If, on the other hand, there existed an allegation that all Burger King restaurants are similar, in that they possess commonality of architecture, or that they implement a corporate policy violative of the ADA, Clark may have standing as to restaurants he has yet to visit. However, it is important to note that many Burger King restaurants were built at various times and markedly differ from one-another in their construction and configuration.

fendant's motion to dismiss all of Clark's claims. However, we will dismiss the claims related to Burger King restaurants not visited by Clark.

## VIII.

 With regard to Plaintiff AD-AAT's standing to pursue claims, both in its own right and in a representative capacity on behalf of its members, we find that Title III of the ADA does not confer a right of action to ADAAT to sue in its own right. However, we must consider whether ADAAT may be able to prove standing to assert ADA violations in a representative capacity. In order for an organization, such as ADAAT, to possess standing to sue in its own right, it must allege " 'a personal stake in the outcome' of an otherwise justiciable controversy." *Kessler Institute for Rehabilitation v. Mayor and Council of Borough of Essex Fells*, 876 F.Supp. 641, 656 (D.N.J.1995) (dismissing association's claims for lack of standing, because complaint failed to identify members and show their individual standing) (quoting *Warth*, 422 U.S. at 498, 95 S.Ct. at 2204–05); *see Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 487 n. 23, 102 S.Ct. 752, 755, 70 L.Ed.2d 700 (1982) (organizations's claim that certain unidentified members suffered injury was insufficient to confer standing); *see also Pennsylvania Prot. & Advocacy, Inc. v. Houston*, 136 F.Supp.2d 353, 365–68 (E.D.Pa.2001) (dismissing association's complaint for failing to identify constituents and establish their standing). "An organization does not possess standing simply because it has an ideological or abstract social interest that is adversely affected by the challenged action." *Kessler*, 876 F.Supp. at 656 (citing *Sierra Club*

*v. Morton*, 405 U.S. 727, 735, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972)). However, "an organization has standing ... to challenge conduct that impedes its ability to attract members, to raise revenues, or to fulfill its purposes." *Kessler*, 876 F.Supp. at 656 (citing Chemerinsky, *Federal Jurisdiction*, § 2.3.7 (1989)). In the underlying complaint, ADAAT contends that it has (1) been forced to divert time, energy, effort, and other resources from educational, informational, and counseling purposes to combat the systematic discrimination faced by its members and other disabled persons at Burger King restaurants; (2) suffered a concrete and demonstrable injury to its activities, including a consequent drain of its resources, which has impaired its ability to monitor, educate, inform, and counsel its members and other disabled persons about equal access issues; and (3) that its time and money has been deflected from educational and counseling functions toward legal efforts directed against discrimination. (Pls.' Complaint, ¶ 15).

ADAAT, as an organization, of course, is not a disabled individual. *W.G. Nichols, Inc.*, 2002 WL 1335118, at *16. Furthermore, ADAAT has failed to "substantiate any impairment to its mission." *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 77 (3d Cir.1998). Rather, absent evidence to the contrary, it appears that ADAAT is an organization whose primary purpose is ADA litigation.[12] Although AD-AAT may have an ideological interest in preventing disability based discrimination, such a "purely ideological injury is insufficient to support standing to sue in its own right." *Kessler*, 876 F.Supp. at 656; *see Sierra Club*, 405 U.S. at 735, 92 S.Ct. at 1366. Accordingly, based upon allegations

12. ADAAT, in its first 18 months of existence, filed 26 ADA lawsuits. (Def. BKC's Mot. to Dismiss Ex. A).

contained in Plaintiffs' amended complaint, ADAAT lacks standing to pursue any claims in its own right.

■ However, if an association, such as ADAAT, lacks standing because it has not suffered an injury-in-fact, it may bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members in the lawsuit." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)).

In the underlying complaint, ADAAT fails to allege sufficient facts to support a finding that it possesses standing to sue on behalf of members other than Clark. As noted, for an organization to have representative standing, it must show that its "members would have standing to sue on their own." *Kessler*, 876 F.Supp. at 656 (quoting *Public Interest Research Group of New Jersey v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 70 (3d Cir.1990)). ADAAT fails to identify which members visited which restaurants on which dates and when such members plan to return to these Burger King restaurants. Thus, at this juncture ADAAT has representative standing to assert ADA violations only in so far as Clark has standing as to New Jersey restaurants.

While, as we have indicated, ADAAT does not have standing to assert ADA violations on behalf of its members, other than Clark, it may be that ADAAT can cure this deficiency by amending the complaint. Therefore, we will (1) dismiss all of ADAAT's claims without prejudice (other than those claims relating to Burger King restaurants actually visited by Clark), and (2) give ADAAT, pursuant to Fed.R.Civ.P. 15(a),[13] sixty (60) days to formally amend its complaint, setting forth particularized facts supportive of its standing to bring suit in a representative capacity. *Newark Branch, NAACP v. Town of Harrison, New Jersey*, 907 F.2d 1408, 1415 (3d Cir. 1990); *see Warth*, 422 U.S. at 501–02, 95 S.Ct. at 2206–07; *see also Doherty v. Rutgers School of Law–Newark*, 651 F.2d 893, 898 (3d Cir.1981).

## IX.

Lastly, as to Plaintiffs' anticipated request for class certification, it is still too early to predict whether Plaintiffs will eventually be able to certify plaintiff and defendant classes similar to those defined in the amended complaint. Therefore, we must await Plaintiffs' motion to certify.

## X.

For the foregoing reasons, the present motions will be granted in part and denied in part. Defendant's Motion to Transfer Venue is denied. The Motion to Dismiss all of Clark's claims is denied, except that the claims related to Burger King restaurants not visited by Clark are dismissed. All of ADAAT's claims (other than those claims relating to Burger King restaurants actually visited by Clark) are dismissed without prejudice to the amending complaint. The Court will issue an appropriate order.

---

**13.** Under Fed.R.Civ.P. 15(a), leave to amend "shall be freely given when justice so requires."

ORDER DENYING MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF FLORIDA, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

This matter having appeared before the Court upon Defendant BKC's motions to (1) transfer venue in this dual class action, pursuant to 28 U.S.C. § 1404(a), to the Southern District of Florida, and (2) dismiss Plaintiffs' amended complaint, pursuant to Fed.R.Civ.P. 12, the Court having considered the submissions of the parties, for the reasons set forth in an Opinion issued by this Court, which findings of fact and conclusions of law are incorporated herein by reference, and for good cause appearing,

**IT IS** on this day of April, 2003,

**ORDERED THAT:**

1. Defendant's Motion to Transfer Venue to the Southern District of Florida is **DENIED;** and

2. Defendant's Motion to Dismiss all of Plaintiff Clark's claims is **DENIED,** except that the claims related to Burger King restaurants not visited by Clark are **DISMISSED;** and

3. The claims brought by Clark regarding architectural barriers that do not relate to his particular disability are **DISMISSED AS MOOT;** and

4. All claims, other than those relating to Burger King restaurants visited by Clark, brought by Plaintiff, ADAAT, are **DISMISSED** without prejudice, provided that ADAAT may move to amend its complaint within sixty (60) days, which motion shall include a copy of the proposed amended complaint.