Peter GOLDSTEIN et al., Plaintiffs,

v.

COSTCO WHOLESALE
CORP., Defendant.

No. Civ.A. 02–1520.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 31, 2003.

Joseph E. Kolick, Carmela N. Edwards, Dickstein Shapiro Morin & Oshinsky LLP, Lois G. Williams, Reed Colfax, Eliza T. Platts–Mills, Washington Lawyers' Committee for Civil Rights & Urban Affairs, Washington, DC, for Plaintiffs.

Charles A. Valente, Eli Rollman, Krasnow Saunders Cornblath, LLP, Chicago, IL, John F. Scalia, Timothy C. Bass, Greenberg Traurig, LLP, McLean, VA, for Defendant Costco Wholesale Corporation.

### MEMORANDUM OF OPINION

DOUMAR, District Judge.

Plaintiffs Peter Goldstein and the Disability Rights Council of Greater Washing-

ton (hereinafter "DRC") brought this action to redress alleged violations of the Americans with Disabilities Act, the Rehabilitation Act, and Virginia law. This matter proceeded to trial, and upon the completion of Plaintiffs' case in chief, the Court found that the DRC lacked standing to bring suit on its own behalf. Accordingly, the Court dismissed the DRC as a plaintiff in its own right. The DRC was, however, allowed to proceed in a representative capacity on behalf of Goldstein. This Memorandum of Opinion explains the Court's reasoning for finding that the DRC lacked standing to bring suit and obtain damages on its own behalf in this matter.

## I. Factual and Procedural Background

Plaintiff Peter Goldstein is a 67 year old epileptic who resides in Arlington, Virginia. Every two to three days, Goldstein experiences seizures as a result of his epilepsy. Goldstein receives medical treatment for his epilepsy, and as part of that treatment, he takes several prescription medications, including Dilantin.

Defendant Costco Wholesale Corporation (hereinafter "Costco") is a Washington state corporation that is engaged in the business of providing discount goods and services to its customer-members at retail warehouses throughout the United States. One of Costco's retail warehouses is located at 1200 South Fern Street, Arlington, Virginia (hereinafter "the Pentagon City Costco").

Goldstein lives directly across from the street from the Pentagon City Costco. Therefore, beginning in 1998, Goldstein obtained his prescription medications from the pharmacy located in the Pentagon City Costco.

On October 13, 2001, the Pentagon City Costco banned Goldstein from returning to their premises. *See* Pl.'s Ex. 3—Notice Forbidding Trespass (stating that Goldstein is "forbidden to trespass or enter upon" the lands, dwellings, or curtilage of "Costco 1200 S. Fern St."). At dispute in this case is why Goldstein was banned from the Pentagon City Costco. Goldstein asserts that he was banned from Pentagon City Costco because he is an epileptic who suffered seizures while inside the Pentagon City Costco. On the other hand, the Pentagon City Costco contends that it banned Goldstein because of Goldstein's threatening behavior, which made the pharmacy and other staff fearful for their own safety.

On October 11, 2002, Goldstein and the DRC each filed the present action seeking compensatory and punitive damages as well as injunctive relief for alleged violations of the Americans with Disabilities Act, the Rehabilitation Act, and Virginia law. In relation to the DRC, the Complaint states:

> [T]he unlawful, discriminatory actions of Defendant Costco interfered with efforts and programs of the Disability Rights Council intended to bring about equality of access to public programs, services, and accommodations; required the DRC to commit scarce resources, including substantial staff time, to identify and counteract Costco's discriminatory actions, thus diverting those resources from other education, counseling, and referral services; and frustrated the DRC's mission and purpose of promoting the equal access, equal rights, and equal opportunities of individuals with disabilities in the Greater Washington D.C. Metropolitan Area.

Pls.' Second Am. Compl. at §§ 30 and 45. In answering Plaintiffs' Complaint, Costco asserted that "plaintiffs do not have standing to raise some or all of their claims." Def.'s Answer at 8.

On July 11, 2003, United States District Judge James C. Cacheris denied Defendant's Motion for Summary Judgment with respect to Plaintiffs' claims of a violation of the ADA, a violation of the Rehabilitation Act, and intentional infliction of emotional distress. A trial in this matter commenced on July 21, 2003, at which the undersigned presided. During its case-in-chief, Plaintiffs called the following witnesses: Peter Goldstein; Dr. Faye Rosenbaum, Goldstein's neurologist; James McAuley, Associate Professor of Pharmacy Practice and Neurology, Ohio State University; Amos Gbenjo, Pentagon City Costco Pharmacy Manager; Elfriede Sande, a friend of Goldstein; Arlington County Police Officer Richard St. Clair; Arlington County Police Officer Keith Ahn; Dr. Henry Skopek, Goldstein's psychiatrist; and Linda Royster, Executive Director of the DRC. At the close of Plaintiffs' case in chief, the Court raised the issue of DRC's standing to bring suit sua sponte. The Court directed the parties to conduct research on the question of DRC's standing during the recess. After the recess, the Court heard argument on the issue of DRC's standing.

## II. Legal Analysis

■ Article III, § 2 of the United States Constitution limits federal jurisdiction to actual cases and controversies. As such, a plaintiff's standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Since standing is a limitation on judicial power, a federal court can inquire into standing at any stage of a case, and if it finds the plaintiff lacks standing, it may dismiss the case. *Marcus Cable Associates v. City of Bristol,* 237 F.Supp.2d 675, 677 n. 2 (W.D.Va.2002) (stating that a district court has "the duty to ascertain sua sponte the standing of a party under the Constitution's grant of power to the federal courts to resolve 'cases' and 'controversies.' U.S. Const. art. III.").

■ In order to meet the Article III requirements for standing, a plaintiff must prove: (1) that he or she suffered an "injury-in-fact;" (2) a causal relationship between the injury and the challenged conduct; and (3) that the injury will likely be redressed by a favorable decision. *Friends of the Earth. Inc. v. Laidlaw Envtl. Services,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). If a plaintiff fails to make the necessary allegations, he or she has no standing. *Warth,* 422 U.S. at 517–518, 95 S.Ct. 2197.

■ "An organization has standing to sue under the ADA if it meets Article III's standing requirements." *Ass'n for Disabled Americans, Inc. v. Claypool Holdings,* No. IP00–0344–C–T/G, 2001 WL 1112109, at *14 (S.D.Ind. Aug. 6, 2001) (citing *Innovative Health Sys., Inc. v. City of White Plains,* 117 F.3d 37, 48 (2nd Cir.1997)). An organization can establish standing to bring suit under two theories. The first is an organizational theory which enables an organization to bring suit on its own behalf. The second is a representational theory which allows an organization to sue on behalf of its members. *Moseke v. Miller and Smith, Inc.,* 202 F.Supp.2d 492, 497 (E.D.Va.2002); *Buchanan v. Consol. Stores Corp.,* 125 F.Supp.2d 730, 736 (D.Md.2001); *Maryland Minority Contractor's Ass'n, Inc. v. Maryland Stadium Auth.,* 70 F.Supp.2d 580, 587 (D.Md.1998).

■ An organization has standing to sue in its own right if the organization has suffered a "concrete and demonstrable injury to the organization's activities—with

[a] consequent drain on the organization's resources – constitut[ing] ... more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). Thus, the question becomes somewhat circuitous as damages or injury is the issue. In *Maryland Highways Contractors Ass'n Inc. v. State of Maryland,* the United States Court of Appeals for the Fourth Circuit stated that in determining whether organizational standing exists, "a court conducts the same inquiry as in the case of an individual, determining if the plaintiff has alleged such a personal stake in the outcome of the matter to warrant his invocation of federal court jurisdiction." 933 F.2d 1246, 1250 (4th Cir.1991). *See also, Moseke,* 202 F.Supp.2d at 497 (stating that "an organization has standing to sue on its own behalf based on the injury it has suffered" and citing *Havens,* 455 U.S. at 379, 102 S.Ct. 1114); *Clark et al. v. Burger King Corp.,* 255 F.Supp.2d 334, 344 (D.N.J.2003) (stating that in order for an organization to "possess standing to sue in its own right, it must allege a personal stake in the outcome of an otherwise justiciable controversy.").

■ "[U]nder *Havens Realty,* an organization suffers a concrete and demonstrable injury if it diverts its resources such as time and money from its primary activities to legal efforts to fight alleged discrimination by the defendant." *Ass'n for Disabled Americans,* 2001 WL 1112109, at *14. However, "a conflict between a defendant's conduct and [the] organization's mission is alone insufficient to establish Article III standing." *Buchanan,* 125 F.Supp.2d at 737–38 (quoting *Nat'l Treasury Employees Union v. United States,* 101 F.3d 1423, 1429–30 (D.C.Cir.1996)). *See also, Clark,* 255 F.Supp.2d at 344 (stating that "an organization does not possess standing simply because it has an ideological or abstract social interest that is adversely affected by the challenged action.").

In *Havens,* a non-profit organization challenged the alleged racial steering practices of a realtor under the Fair Housing Act. *Havens,* 455 U.S. at 366–68, 102 S.Ct. 1114. In its complaint, the non-profit organization alleged that its purpose was "to make equal opportunity in housing a reality," and "[i]ts activities included the operation of a housing counseling service, and the investigation and referral of complaints concerning housing discrimination." *Id.* at 368, 102 S.Ct. 1114. The non-profit organization further alleged that its efforts to provide counseling and referral services had been frustrated by the fact that it had to devote its resources to fighting the defendant's alleged discriminatory practices. *Id.* In discussing the non-profit organization's standing, the Supreme Court stated,

> If, as broadly alleged, petitioners' steering practices have perceptibly impaired [the non-profit organization's] ability to provide counseling and referral services for low-and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact. Such concrete and demonstrable injury to the organization's activities-with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests.

*Id.* at 379, 102 S.Ct. 1114. Thus, the Supreme Court held that the non-profit organization's allegations were sufficient to confer standing on a motion to dismiss. *Id.*

■ As elicited at trial, the DRC's mission is to address "system discrimination against people with disabilities in every aspect of society." Pls.' Ex. 11—Mission Statement of the DRC. The only person

who testified on behalf of the DRC was Linda Royster, the Executive Director of the DRC. Royster is a lawyer and a member of the District of Columbia Bar. On direct examination, Royster testified that the DRC specifically used the legal and educational process to eliminate discrimination against people with disabilities. Royster further testified that the DRC has three programs designed to achieve its purpose: (1) it provides information to the disabled; (2) it provides training to businesses and the government; and (3) it assists individuals in filing complaints or lawsuits. On cross-examination, Royster admitted that over 80% of the DRC's funds have been obtained from lawsuit settlements or verdicts. Royster further admitted that she could not precisely state what percentage of the DRC's total revenue came from litigation settlements or verdicts, but she reiterated that it was over 80%. Thus, the primary source of revenue for the DRC are the settlements or verdicts that it receives from lawsuits or threatened lawsuits. Rather than be "damaged" or "injured in fact" in this matter, the DRC would be enhanced if awarded damages. Consequently, the DRC's primary source of revenue would be increased rather than decreased.

On the basis of this admission, there can be little doubt that the DRC's primary activity is assisting individuals in filing complaints or lawsuits. The DRC's primary activity stands in stark contrast to that of the non-profit organization in *Havens*. The non-profit organization in *Havens* focused on operating a housing counseling service, investigating complaints about housing discrimination, and then referring those complaints to others for further pursuit. The non-profit organization in *Havens* did not actively engage in litigation nor did it rely on litigation as its predominate source of income. In contrast, the DRC focuses on filing complaints or lawsuits and is in the business of litigating alleged disability discrimination as evidenced by the fact that a minimum 80% of its revenue is obtained from litigation settlements or verdicts.

■ Ordinary programming costs are insufficient to establish an injury in fact. *Plotkin v. Ryan*, No. 99 C 53, 1999 WL 965718, at *5 (N.D.Ill. Sept. 29, 1999) (citing *Nat'l Taxpayers Union*, 68 F.3d at 1433). At trial, Royster, a lawyer, testified that she spoke with Goldstein and conducted research on epilepsy. Indeed, Royster admitted that the DRC did not even conduct an independent investigation into Goldstein's claim of discrimination based upon his disability. Rather, after speaking with Goldstein, she recommended to her board of directors that the DRC pursue a direct claim against Costco. Quite simply, the only thing dome in this case by the DRC was to interview Goldstein and obtain sufficient information to bring suit. Thus, the DRC did not establish that it was required to divert resources to counteract the alleged discrimination by Costco. In this case, the DRC failed to articulate a concrete and demonstrable injury based upon the diversion of resources.

■ When an organization's primary source of revenue is litigation directed against alleged discrimination, it cannot be said that the organization's participation in such litigation impairs its ability to do its work. *See, e.g., Clark*, 255 F.Supp.2d at 344 (finding that A.D.A. Access Today, a non-profit organization, is an organization whose primary purpose is ADA litigation and that it "has failed to substantiate any impairment to its mission."); *Ass'n for Disabled Americans*, 2001 WL 1112109, at *15 (stating that "the Association's participation in the instant case does not impair the Association's ability to do its work; rather, it is the very work of the Associa-

tion to litigate alleged discrimination in violation of the ADA."). Here, the DRC's primary source of revenue is ADA litigation. As such, the DRC's participation in this case did not impair the DRC's ability to do its work. Therefore, the DRC cannot establish a concrete and demonstrable injury based upon the frustration of its mission or purpose.

## III. Conclusion

As indicated by its predominant source of revenue, the DRC's primary source of revenue is ADA litigation. Consequently, the DRC's participation and expenditure of resources in this case is insufficient to constitute a concrete and demonstrable injury or damage to its activities. Succinctly put, the DRC has not met its burden of demonstrating organizational standing. Accordingly, the Court finds that the DRC lacked standing to bring suit on its own behalf and dismisses the DRC as a plaintiff in its own right, but it may proceed in a representative capacity on behalf of Goldstein. Goldstein may also proceed in his own right.

The Clerk is **DIRECTED** to send a copy of this Order to all counsel of record. **IT IS SO ORDERED.**