**CONCERNED PARENTS TO SAVE DREHER PARK CENTER, Deborah Berris, Joycelyn Thomas, Stephen Lord, Chad Johnson, Tor Lind, Michael Potente, Maria Blasi, Laurie Mullis, Karrie Pitman, Duncan Cruickshank, James Irwin, and Frances Irwin, Plaintiffs,**

v.

**CITY OF WEST PALM BEACH, Defendant.**

No. 93–8532–CIV.

United States District Court, S.D. Florida.

Oct. 27, 1994.

As Amended Nov. 28, 1994.

James K. Green, West Palm Beach, FL, for plaintiffs.

Robert Rivas, Holland & Knight, and Patrick N. Brown, City Atty. West Palm Beach, for defendant.

## FINAL JUDGMENT

RYSKAMP, District Judge.

### I. Introduction

THIS CAUSE came before the Court for trial beginning on May 24, 1994. The plaintiffs and the defendant presented to the Court a proposed Consent Judgment establishing the City of West Palm Beach's liability for violating Title II of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* (West Supp.1994). (the "ADA").[1] This Court approved and executed the Consent Judgment, leaving for trial the question of what remedy would be appropriate. The plaintiffs seek only injunctive relief.

### II. Motion to Dismiss Concerned Parents

■ As a preliminary matter, the Court must consider the City's motion to dismiss Concerned Parents to Save Dreher Park Center, Inc. ("Concerned Parents") as a named party plaintiff.[2] That motion is granted based on the following analysis.

The Complaint alleged that Concerned Parents is an "association of over fifty parents and volunteers organized to protect the rights of people with disabilities to recreational opportunities in the City of West Palm Beach." They were organized on July 28, 1993, "because of the community's concern that services for disabled persons would be eliminated" by the City in the process of cutting the City's budget.

Concerned Parents cannot establish associational or representational standing to sue on behalf of its members under the three-prong analysis set forth in *Hunt v. Washington State Apple Advertising Comm.,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977): [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt,* 432 U.S. at 343, 97 S.Ct. at 2441.

The City has conceded that Concerned Parents qualifies under the first two prongs of the test since its members, at least theoretically, would have standing to sue in their own right and the organization was created to protect their interests. However, Concerned Parents cannot meet the third prong because any finding of an ADA violation requires proof as to each individual claimant. In addition, the relief afforded to each claimant would require an individualized assess-

---

1. The consent judgment contained no reference to Count II of the complaint, which claimed that the City violated Article I, section 2 of the Florida Constitution by eliminating the Dreher Park Center programs, and the plaintiffs made no separate argument at trial pertaining to Count II. Consequently, the Court assumes for purposes of final judgment that the plaintiffs will not prosecute the claims contained in Count II.

2. The association was unincorporated when suit was filed. In 1994, the association was incorporated and the corporation was substituted in this action as the plaintiff. Whether the entity is or was incorporated is not material to the remaining issues in this case.

ment of what measures the City must take in order to comply with the ADA on a case-by-case basis.

Pursuant to the Consent Judgment, the Court found that 12 individuals were subjected by the City to an ADA violation. Each was before the Court as an individually named plaintiff. They obviously had standing to pursue their own claims, and each claim had to be examined individually. The plaintiff cannot, however, shoehorn an unknown number of supposed, but unknown, victims into their cause of action by the mechanism of associational standing. *See, e.g. Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.,* 772 F.2d 467 (8th Cir.1985) ("[a]ssociational standing is properly denied where, as here, the need for 'individualized proof,' [citation to *Hunt* omitted], so pervades the claim that the furtherance of the members' interests requires individual representation"). The City's motion to dismiss Concerned Parents and to strike Concerned Parents as a plaintiff is therefore granted.

### III. Relief

The 12 named plaintiffs were participants in the City's Special Populations Program for persons with disabilities at Dreher Park. Each plaintiff has a specific disability that makes him or her unable or unsuited to participate in the recreational programming offered by the City to the general public. Each of the plaintiffs benefitted from the program for individuals with disabilities available at the Dreher Park Center.

In September of 1993 the City eliminated the Dreher Park Center program during budget cuts provoked by a shortfall in revenue. At that time, there was no program in place that was suitable to provide any recreational services to the 12 plaintiffs, who were qualified individuals with disabilities and who sought to enjoy the benefit of the City's leisure services programs. Coupled with the City's complete elimination of the program for persons with disabilities was an extreme disparity between the extent of the budget cuts for the disabled population and the non-disabled. The combination of these factors constituted a violation of Title II because the City had effectively denied plaintiffs the ben-

efit of leisure services on account of their disabilities.

At trial, the City attempted to prove that it has revived the very "core programs" formerly offered at Dreher Park Center. Thus, the City sought to demonstrate that the plaintiffs have no need for further judicial intervention in the form of a permanent injunction from this Court.

At the time of the budget crisis, the City was in the process of negotiating a contract in which the local chapter of the Association for Retarded Citizens ("ARC") would replicate six specific "core programs" formerly offered at Dreher Park and specially designed for children and adults with disabilities. Those negotiations broke down during the 1993 controversy and were not resumed until the preliminary injunction was entered by this Court. In response to the injunction, the City resumed its efforts to complete a contract with ARC to replicate the Dreher Park programs. The City took this step even though it could have provided the benefits of the City's leisure services programs to persons with disabilities by countless mechanisms and programs completely dissimilar to the ones formerly offered at Dreher Park Center.

On May 9, 1994, the West Palm Beach City Commission approved a resolution authorizing the mayor to enter into a contract for ARC to provide only four of the "core programs" with direct City funding in excess of $71,000 and a contribution by the City to ARC of certain supplies and equipment formerly used at Dreher Park. Counsel for the City later obtained extensive comment and criticism of the agreement from counsel for the plaintiffs. At a deposition videotaped in Chicago and played at trial, the City and counsel for the plaintiffs went over the ARC agreement and the written comments of the plaintiffs with John N. McGovern, an expert in recreational programming for the people with disabilities and the author of a handbook for city recreation officials on how to comply with the ADA.

Based on the comments of the plaintiffs and McGovern, the City and ARC entered into an Amended and Restated Agreement

superseding the May 9 agreement. The Amended and Restated Agreement increased the City's funding, expanded the term of the contract to cover 15 months, expanded the number of replicated former Dreher Park Center "core programs" to six, and made a variety of other substantive changes in the terms of the agreement. The West Palm Beach City Commission approved the Amended and Restated Agreement on May 23, 1994, literally on the eve of trial, and ARC's executive director, Joyce Laird, executed the agreement on the first day of trial.

Ms. Laird testified at trial that she was in the process of hiring a recreation director and expected to be able to comply with the Amended and Restated Agreement's provision for a summer camp to begin on July 5, 1994, especially aimed at serving the needs of children with attention deficit. disorder, learning and hearing impairments, and other disabilities. Ms. Laird testified that the other five programs would be running by September.

The City's position is that the ARC contract addressed the precise grievances made by the 12 named plaintiffs in this case by replicating the programs that they had participated in at Dreher Park. In addition, the City demonstrated that it is taking measures to increase the training and skill of its employees in the leisure services department to effectively accommodate people with disabilities in integrated recreational programs.

### A. Permanent Injunction

■ At this point, therefore, the plaintiffs need only a permanent injunction that requires that the City continue to effectuate its plans to establish special recreational programs that will be available to provide the 12 plaintiffs with the benefit of the City's leisure services programs on an equal basis with the nondisabled. The City is hereby so enjoined.

The plaintiffs, on the other hand, have asked the Court to enter a permanent injunction imposing extensive, finely detailed requirements on the City's hiring and training of all leisure services department employees and the management and functioning of all leisure services programs, and to require the City to consult with the plaintiffs about virtually every aspect of the City's leisure services operations. The Court declines the plaintiffs' invitation to place the City's leisure services department permanently under the joint supervision of the Court and the plaintiffs in this action. The Court finds that the plaintiffs have failed to establish any justification for the Court to substitute its judgment for that of the City administration as to how to comply with the ADA, or for the Court to oversee the City's efforts to comply.

### B. The ADA Administrative Regulations

■ The Court also declines the plaintiffs' request that this Court enjoin the City to comply with certain administrative regulations promulgated pursuant to the ADA, particularly 28 C.F.R. § 35.105, regarding self-evaluation, and 28 C.F.R. § 35.150(d), regarding the transition plan for compliance with the ADA. The evidence in the record pertaining to the self-evaluation and transition plan established only that the City had not completed them within the time frames established by the Department of Justice regulations,[3] and that the City anticipated completing its compliance with the regulatory requirements by August of 1994.

The Court finds that the plaintiffs have no standing to seek a permanent injunction obligating this Court to oversee the City's completion of its self-evaluation and transition plans. There is no evidence to connect the City's tardiness in complying with these administrative regulations to any specific violation of Title II of the ADA stipulated to by the parties. There must be clear links in the chain of causation between the challenged government conduct and the asserted injury in order to establish standing. *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). Here, as in *Allen,* there is a crucial missing link in the chain of events allegedly giving rise to the plaintiff's injuries.

---

**3.** The Department of Justice deadlines for state and local governments to complete transition plans and self-evaluations were July 26, 1992 and January 26, 1993, respectively.

Moreover, the Supreme Court has consistently held that a plaintiff who raises only a generally available grievance about the government's proper application of the Constitution and the laws does not state an Article III case or controversy. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 572, 112 S.Ct. 2130, 2142, 119 L.Ed.2d 351, 372 (1992). By requesting this Court to issue a permanent injunction ordering the City to comply with the ADA administrative regulations, the plaintiffs in this case have asserted a right possessed by every taxpayer—the right to have our laws enforced. Obviously, this general right does not confer upon a private citizen standing to sue in federal court. *Id.* at 574, 112 S.Ct. at 2143 (citing *Fairchild v. Hughes,* 258 U.S. 126, 129–130, 42 S.Ct. 274, 275, 66 L.Ed. 499 (1922)). Accordingly, the Court finds that the plaintiffs lack standing to obtain a permanent injunction ordering the City's compliance with the ADA administrative regulations.[4]

### IV. Conclusion

Based upon the above, it is ORDERED AND ADJUDGED that

(1) The City's motion to dismiss Concerned Parents for lack of standing is GRANTED; and

(2) The City of West Palm Beach is PERMANENTLY ENJOINED to immediately take all steps necessary to afford the benefits of the City's recreational program to the 12 Plaintiffs in full compliance with Title II of the ADA.

DONE AND ORDERED.

---

4. At the time this Court executed the March 1, 1994 preliminary injunction, no challenge to plaintiffs' standing to enforce the ADA administrative regulations had been raised. In view of the Court's present finding on standing, however, those portions of the preliminary injunction ordering compliance with the ADA regulations were in error.