**Thomas K. SMALL and Disabled in Action of Metropolitan New York, Plaintiffs,**

v.

**GENERAL NUTRITION COMPANIES, INC., Defendant.**

**No. 03CV1872ARR.**

United States District Court, E.D. New York.

Feb. 25, 2005.

Martin J. Coleman, Law Offices of Martin J. Coleman, Huntington Station, NY, for Plaintiffs.

James V. Marks, Holland & Knight LLP, New York City, for Defendant.

*OPINION AND ORDER*

ROSS, District Judge.

Plaintiffs Disabled in Action ("DIA") and Thomas K. Small ("Small") have brought suit against General Nutrition Companies, Inc. ("GNC"), filing on behalf of themselves and as a class action for wheelchair users who live in New York City, alleging that various features of many of GNC's approximately 55 stores in New York City's five boroughs are not sufficiently accessible to the disabled, in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., and New York City Human Rights Law § 8–107(4)(a). Plaintiffs seek injunctive relief, declaratory relief, and attorney's fees and costs. Defendant moves to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(6) on the basis that both the individual and the organizational plaintiff lack standing. Defendant also moves, preemptively, to deny class certification.

For the reasons stated below, the court grants defendant's motion with respect to DIA's claim of organizational standing, grants defendant's motion with respect to DIA's claim of associational standing, and grants in part and denies in part defendant's motion with respect to individual plaintiff Small. The court defers ruling on defendant's motion to deny class certification.

## BACKGROUND

On April 17, 2003, plaintiffs Small and DIA filed suit against GNC alleging failure to provide sufficient access to persons with disabilities under Title III of the ADA and New York City administrative code. After several conferences with the court, plaintiffs amended their Complaint three times in order to establish standing. Currently before the court is plaintiffs' Third Amended Complaint ("Third Am. Compl."), dated September 30, 2004.

Plaintiff Small resides in Brooklyn, New York and suffers from muscular dystrophy. He has used a motorized wheelchair since he was a child. Small regularly purchases nutritional supplements, including vitamins. Third Am. Compl. ¶ 15. Small has purchased such products from various GNC stores in Manhattan and New York City's other boroughs. *Id.* at ¶ 17. He alleges, however, that eleven of GNC's stores in New York City have architectural barriers to entry, i.e., steps, that violate the ADA by making it difficult or impossible for wheelchair users to enter. *Id.* at ¶¶ 10–11. He further alleges that the "vast majority" of GNC's approximately 55 New York City stores have temporary, moveable product bins or displays that impede wheelchair users from passing through aisles. *Id.* at ¶ 18. Small lives in the

immediate vicinity of the GNC store at 58 Court Street in Brooklyn, which has a structural barrier at the entrance. *Id.* at ¶ 12. He states that he "regularly travels in the immediate vicinity" of six other GNC stores with such structural barriers. *Id.* at ¶ 14. Small also states that he has often encountered barriers to access at GNC stores because of moveable product bins. *Id.* at ¶ 17.

Plaintiff DIA is a non-profit ADA advocacy organization headquartered in New York. Among other things, DIA advocates to achieve for its members, as well as for non-members, accessibility to public accommodations and public entities. DIA appears at public events and hearings to provide testimony, files informal as well as formal administrative complaints against offending public accommodations and public entities, and acts as a plaintiff in ADA litigation. The organization's members have "a wide variety of disabilities affecting mobility." *Id.* at ¶ 3. On the basis of its organizational purpose and membership, DIA claims that it enjoys "organizational" or "independent" standing to bring this action in its own right, as well as "associational standing" to bring this action on behalf of its disabled members.

As noted, plaintiffs claim that eleven of GNC's approximately 55 New York City stores have architectural barriers to entry, i.e., steps, that prevent wheelchair users from entering. Plaintiffs also claim that the "vast majority" of these 55 stores use moveable product bins or displays that also constitute access barriers to wheelchair users. Plaintiffs bring this suit both on their own behalf and as a class action on behalf of all similarly situated wheelchair users in New York City.

## DISCUSSION

### I. *Standing*

Federal jurisdiction is limited by Article III, § 2, of the U.S. Constitution to actual cases and controversies. As a result, the plaintiffs' standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Courts must assess whether standing exists based on the facts as they existed at the time the lawsuit was filed. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 190–91, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *Steger v. Franco, Inc.,* 228 F.3d 889, 893 (8th Cir.2000) (citation omitted). To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an "injury in fact," (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

An "injury in fact" is a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560, 112 S.Ct. 2130 (internal quotation marks and citations omitted). The plaintiff must show that he or she "sustained or is immediately in danger of sustaining some direct injury as the result of the challenged ... conduct and [that] the injury or threat of injury [is] both real and immediate...." *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (internal quotation marks and citations omitted). Courts considering ADA claims have found that plaintiffs who have encountered barriers at public accommodations prior to filing their complaints have standing to bring claims for injunctive relief if they show a plausible intention or desire to return to the place but for the barriers to access. *See*

*Pickern v. Holiday Quality Foods, Inc.,* 293 F.3d 1133, 1138 (9th Cir.2002); *Shotz v. Cates,* 256 F.3d 1077, 1081 (11th Cir. 2001); *Steger,* 228 F.3d 889; *Disabled in Action of Metropolitan New York v. Trump International Hotel & Tower,* No. 01 Civ. 5518(MBM), 2003 WL 1751785, *7, 2003 U.S. Dist. LEXIS 5145, *21–22 (S.D.N.Y. Apr. 2, 2003) (collecting cases). Intent to return to the place of injury "some day" is insufficient. *Lujan,* 504 U.S. at 564, 112 S.Ct. 2130. Although, in the context of Title III of the ADA, plaintiffs need not engage in the "futile gesture" of visiting a building containing known barriers that the owner has no intention of remedying, *see* 42 U.S.C. § 12188(a)(1), they must at least prove actual knowledge of the barriers and show that they would visit the building in the imminent future but for those barriers. *Steger,* 228 F.3d at 892.

██ In addition to these constitutional limitations, there are also three prudential limitations on standing: (1) generally, there is no jurisdiction over "generalized grievances" shared by all or a large class of citizens; (2) a plaintiff must assert his own legal rights and cannot rest his claim to relief on the legal rights of third parties. *Warth,* 422 U.S. at 499–500, 95 S.Ct. 2197 (finding that without such limitations, courts would decide abstract questions of wide public significance better left to the legislative branch) (citations omitted); (3) "plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision ... invoked in the suit." *Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). These prudential limitations on standing are not constitutional restraints on the power of federal courts, and Congress can thus eliminate prudential restrictions if it so desires when enacting legislation. *Warth,* 422 U.S. at 501, 95

S.Ct. 2197. "Congress legislates against the background of [the Supreme Court's] standing doctrine," however, "which it applies unless it is expressly negated." *Bennett,* 520 U.S. at 163, 117 S.Ct. 1154.

On a motion to dismiss, a district court must "accept all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Thompson v. County of Franklin,* 15 F.3d 245, 249 (2d Cir.1994) (quoting *Warth,* 422 U.S. at 501, 95 S.Ct. 2197). Standing, however, "cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear on the record." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (internal quotation marks and citations omitted). "It is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating he is a proper party to invoke judicial resolution of the dispute." *Id.* (internal quotation marks and citations omitted). When considering whether a plaintiff has established standing, however, district courts may permit a plaintiff to amend its complaint or consider affidavits containing particularized facts supporting standing. *Thompson,* 15 F.3d at 249 (quoting *Warth,* 422 U.S. at 501, 95 S.Ct. 2197); *Spann v. Colonial Village, Inc.,* 899 F.2d 24, 28 n.1 (D.C.Cir.1990).

A. *Small's Standing*

Defendant argues that plaintiff Small lacks standing to assert any claims against it because the Third Amended Complaint fails to identify (a) any specific stores at which Small has experienced discrimination, (b) when he experienced discrimination at any of defendant's stores, and (c) a sufficiently specific intent to return to those stores at some time in the imminent future. The Third Amended Complaint states that Small "lives in the immediate

neighborhood" of defendant's store at 58 Court Street in Brooklyn and that he cannot enter that store because of an architectural barrier. Third Am. Compl. ¶¶ 10–12. The Third Amended Complaint further states that Small "regularly travels in the immediate vicinity of several of the GNC stores" in New York City, specifically naming seven stores, including the one at 58 Court Street in Brooklyn. *Id.* at ¶ 14. The Third Amended Complaint states that Small regularly purchases vitamins and other nutritional supplements and that he has purchased such products from various GNC stores that have no architectural barriers to entry. *Id.* at ¶¶ 15–16. The Complaint alleges that, in those stores, Small has often had to seek assistance from employees because product bins prevent him from accessing the entirety of those stores. *Id.* at ¶ 17. Finally, the Complaint states that Small "will continue to purchase" products from various GNC stores "along his usual routes of travel" and that he "would like to be able to purchase them at all the stores on his routes of travel" without facing architectural barriers. *Id.* at ¶ 19.

In support of Small's standing, without invoking the statutory "futile gesture" language, 42 U.S.C. § 12188(a)(1), plaintiff's brief seems to make a "futile gesture" argument. Under Title III's futile gesture clause, "once a plaintiff has *actually* become *aware* of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury." *Pickern,* 293 F.3d at 1136–37. The plaintiff must also show that he "would visit the building in the imminent future but for those barriers." *Steger,* 228 F.3d at 893. While plaintiff Small does not invoke the futile gesture clause, he argues in his brief that he "passed by" the seven GNC stores with architectural barriers listed in Paragraph 14 of the

Complaint and does not state that he attempted to enter any of these stores. Plaintiff's Opposition Brief at ¶ 16. Rather, plaintiff argues that it is a "reasonable inference" that Small observed the architectural barriers to entry at the seven stores because he regularly travels in their immediate vicinity. *Id.* Put differently, Small appears to argue that he had "actual knowledge" of the barriers to entry at these seven stores. Of relevance to the futile gesture clause's "intent to visit" requirement, plaintiff argues in his brief that based on the number of GNC outlets and its discount prices, it is a "reasonable inference" that Small, a frequent buyer of vitamins and other nutritional supplements, "would purchase [these goods] more often from [GNC] than from other purveyors of vitamins and health foods." *Id.* at ¶ 17. Finally, plaintiff argues in his brief that it is a "reasonable inference" from the Third Amended Complaint that Small would have purchased goods from the seven stores listed in paragraph 14 of the Complaint prior to filing the instant suit but for the architectural barriers to entry and that he will continue to shop at GNC stores without architectural barriers on a regular basis. *Id.* at ¶¶ 18, 20.

█ The court notes preliminarily that, of the seven stores listed in paragraph 14 of the Third Amended Complaint that Small claims to travel in "the immediate vicinity of" during his regular movements through New York City, the GNC store at 58 Court Street in Brooklyn should be analyzed separately. Plaintiff states in the Complaint that he lives in the "immediate neighborhood" of that store and has lived in that neighborhood throughout his entire life. Third Am. Compl. ¶ 12. While Small does not state in the Complaint that he ever actually experienced discrimination at that store, the court finds the allegations in the Complaint to warrant an inference

that plaintiff has standing with respect to that store under Title III's futile gesture clause. Because plaintiff has lived near that GNC store for many years and frequently purchases GNC products, the court finds that the allegations in the Complaint warrant an inference that plaintiff had actual knowledge of the entrance barrier at 58 Court Street at the time he filed suit and that he would visit that store in the imminent future but for the entrance barrier. Thus, plaintiff has sufficiently established standing with respect to that store.

■ The same cannot be said for the remaining six stores listed in paragraph 14 of the Third Amended Complaint. With respect to these six stores, plaintiff is essentially asking the court to infer both that plaintiff actually knew of the barriers at these stores and that he would visit those stores but for the barriers without having alleged sufficient facts permitting such an inference. While such an inference is warranted with respect to the store at 58 Court Street, in the neighborhood in which plaintiff has lived for many years, the court cannot make such an inference with respect to the other six stores. Plaintiff has alleged only that he "regularly travels in the immediate vicinity" of these stores. Third Am. Compl. ¶ 14. The court cannot infer from this allegation that plaintiff had actual knowledge of the entrance barriers at these stores, even if such barriers are readily observed by passers-by. Plaintiff simply has not alleged sufficient facts to establish actual knowledge of those barriers. Plaintiff has also failed to allege sufficient facts to establish that he would visit any of these stores in the imminent future but for those barriers. To make such a showing, plaintiff would have to establish something more than a general desire to patronize GNC stores. Rather, petitioner must establish that but for the barrier at a

particular store, he would visit that store in the imminent future. *See Clark v. McDonald's Corp.,* 213 F.R.D. 198, 215 (D.N.J.2003) (finding that, to establish associational standing based on the futile gesture clause, the organization would have to come forward with evidence establishing that a member would visit a particular restaurant in the future but for the architectural barrier). Finally, Small has alleged no facts that would establish standing as of April 17, 2003, the date plaintiffs filed suit.

■ The court also notes that, contrary to plaintiff's argument, a plaintiff's showing that he "live[s] in close proximity" to the public accommodations he is challenging is clearly insufficient to establish standing under Title III of the ADA. Plaintiff relies most heavily on *Gutherman v. 7–Eleven, Inc.,* 278 F.Supp.2d 1374 (S.D.Fla.2003), in which the court stated: "In order to demonstrate standing, a plaintiff must either live in close proximity to the defendant's facilities, or must demonstrate that he or she has visited the facility and/or is likely to visit in the near future." *Id.* at 1378. The court finds that this is not an accurate statement of the law. The cases cited by the *Gutherman* court in support of its interpretation of the law do not stand for the proposition that a plaintiff may establish standing simply by demonstrating that he lives in close proximity to a public accommodation. To the contrary, the case law establishes the more limited proposition that living in close proximity to the accommodation is one relevant factor in determining the credibility or likelihood of a plaintiff's claim that he would visit that accommodation in the imminent future. *See Shotz,* 256 F.3d at 1081 (discussing the plaintiff's proximity to the accommodation as relevant to the likelihood that he would suffer future discrimination, a consideration necessary to the

determination of whether injunctive relief was appropriate); *Clark v. Burger King Corp.*, 255 F.Supp.2d 334, 342–43 (D.N.J. 2003) (finding, because plaintiff had patronized certain restaurants in the past and lived within a reasonable distance of those restaurants, that plaintiff had established a reasonable likelihood of future injury at those locations necessary to establish an injury in fact underlying a claim for injunctive relief). Thus, the court declines to extend the *Gutherman* court's interpretation of the law, as plaintiff requests, "to those accommodations that are in close proximity to usual routes of travel." Plaintiff's Opposition Brief at ¶ 32. The court reiterates that, while proximity is relevant to the determination of a plaintiff's intent to return to an accommodation in the future, it is insufficient, on its own, to establish Title III's requirements for injunctive relief or the "actual knowledge" and "intent to return" requirements of Title III's futile gesture clause.

The court thus finds that plaintiff Small has established standing only with respect to the GNC store at 58 Court Street in Brooklyn. To be clear, plaintiff has identified, in paragraph 10 of the Third Amended Complaint, eleven GNC stores in New York City that have architectural barriers to entry. In paragraph 14, he states that he "regularly travels in the immediate vicinity" of seven of the stores listed in paragraph 10. To the extent that Small seeks to assert standing with respect to the four GNC stores alleged to have architectural barriers that are listed in paragraph 10 of the Complaint but that plaintiff does not claim to travel in the immediate vicinity of, the court finds that plaintiff has not established standing for the reasons just stated. Likewise, Small fails to specify a single GNC store where he has encountered barriers to access caused by moveable product bins. As a result, plaintiff has failed to establish standing with respect to any store on that basis.

## B. *DIA's Standing*

Plaintiff DIA argues that it has "independent" or "organizational" standing to sue in light of the organizational time and resources it has expended in its effort to remove architectural barriers from defendant's stores. DIA also argues that it has "representative" or "associational" standing on behalf of its members. Defendant's instant motion asserts that plaintiffs' third amended complaint must be dismissed because, *inter alia*, DIA lacks standing on either theory. The court will address each of these theories of standing in turn.

### 1. *Organizational Standing*

■ An organization may attempt to assert standing on its own behalf. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 n. 19, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). When asserting standing on its own behalf, an organization must be able to demonstrate some injury to the association itself that meets the constitutional standing requirements as well as the prudential limitations on standing, unless Congress evinced a clear intent to eliminate those prudential limitations under the statute in question. *See id.* at 378–79, 102 S.Ct. 1114. As the *Havens* Court stated, courts conduct the same inquiry with respect to an organizational plaintiff as with an individual plaintiff: has it "alleged such a personal stake in the outcome of the controversy as to warrant [ ] invocation of federal-court jurisdiction." *Id.* (internal quotation marks and citations omitted).

■ In the instant case, defendant argues that DIA lacks organizational or independent standing under the plain language of Title III of the ADA. Defendant cites 42 U.S.C. § 12188(a)(1) which states, in perti-

nent part, that a remedy is available "to any person who is being subjected to discrimination of the basis of disability ... or who has reasonable grounds for believing that such person is about to be subjected to discrimination." Defendant argues that the Third Amended Complaint does not allege that DIA itself has been the victim of discrimination and that, as a result, it has no standing under the statute to bring suit on its own behalf.

Defendant cites only one case in support of its argument, *Clark v. McDonald's Corp.*, 213 F.R.D. 198 (D.N.J.2003). In *McDonald's Corp.*, an individual plaintiff and a non-profit organizational plaintiff brought suit under Title III of the ADA against McDonald's restaurants located in New Jersey, Pennsylvania, and Wisconsin. The *McDonald's* court determined, notwithstanding its conclusion that the organizational plaintiff had suffered an "injury in fact" sufficient for Article III standing purposes, that the statutory language of Title III's enforcement provision, 42 U.S.C. § 12188(a)(1), erected a prudential barrier that precluded organizational standing where the injury was incurred as a result of the defendant's discrimination against others. *Id.* at 208–09. Stated differently, the *McDonald's* court found that Title III of the ADA "does not evince a congressional intent to eliminate a prudential barrier to the standing of an organization to sue to remedy injury it suffers as a result of discrimination against the dis-

abled, where the organization is not itself being subjected to, nor is itself under threat of being subjected to, such discrimination." *Id.* at 210. The court notes this decision parenthetically before examining whether controlling precedent in the Second Circuit compels a different result.

The Second Circuit has held that the enforcement provision of Title II of the ADA "evinces a congressional intention to define standing to bring a private action ... as broadly as is permitted by Article III of the Constitution." *Innovative Health Systems, Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir.1997) (internal quotation marks and citations omitted). The enforcement provision of Title II, which covers discrimination in public services, provides a remedy "to any person alleging discrimination on the basis of disability." 42 U.S.C. § 12133. The plaintiff in *Innovative Health Systems*, a drug and alcohol rehabilitation center, had brought suit under Title II of the ADA against the city of White Plains after its application for a building permit had been denied by, *inter alia*, the city zoning board of appeals. The plaintiff claimed that its application had been denied on an improper basis in violation of the ADA. On appeal, the Second Circuit considered whether Congress granted an express right of action to persons or entities, like the plaintiff, who would otherwise be barred by prudential standing rules, specifically the second prudential limitation.[1] The court pointed to

---

1. The nub of the problem was that Title II of the ADA, unlike Titles I and III, covering discrimination in employment and public accommodations, respectively, did not define discrimination to include conduct directed at an entity based on its relationship or association with disabled persons. *See* 42 U.S.C. § 12112(b)(4) (Title I); 42 U.S.C. § 12182(b)(1)(E) (Title III). The city argued that the difference in statutory language among the titles made clear that Congress did not intend for parties like the drug and alco-

hol rehabilitation center, which could only assert that it had suffered impermissible discrimination under the ADA by virtue of its clientele, to have standing to sue under Title II of the ADA. While the Second Circuit engaged in statutory construction analysis, finding that Congress intended Titles I, II, and III of the ADA to be read consistently and to prohibit the same types of discriminatory conduct, essentially reading the "association" provisions of Titles I and III into Title II, as discussed above, the court based its holding

the "broad language" of Title II's enforcement provision, which extends relief to "any person alleging discrimination on the basis of disability." 42 U.S.C. § 12133; *Innovative Health Systems*, 117 F.3d at 47–48. Relying on this statutory language, the court concluded, with respect to Title II of the ADA, that Congress had eliminated the prudential limitations on standing and that, because the organizational plaintiff met the three-part constitutional standing requirement, it had standing to sue under Title II. Not faced with a claim under Title III, the court did not address whether Congress had eliminated the prudential standing requirements under that Title.

In order to determine whether DIA has standing to sue GNC under Title III of the ADA, this court must consider whether the Second Circuit's analysis in *Innovative Health Systems* compels a conclusion that Congress intended to eliminate the prudential limitations on standing under Title III as well as Title II. The court does not read the Second Circuit's decision to sweep so broadly. As noted above, the Second Circuit based its holding on the "broad language" of Title II's enforcement provision that grants a remedy to "any person alleging discrimination on the

basis of disability." 42 U.S.C. § 12133. The enforcement provision of Title III, by contrast, grants a remedy to "any person who is being subjected to discrimination on the basis of disability ... or who has reasonable grounds for believing that such person is about to be subjected to discrimination." 42 U.S.C. § 12188(a)(1). The difference in statutory language is not insignificant.[2] The enforcement provision of Title III clearly envisions that a plaintiff himself must currently be suffering or be about to suffer discrimination. The court cannot conclude, based on this statutory language, that Congress intended to eliminate prudential standing requirements under Title III of the ADA. In reaching this conclusion, the court is mindful of the Supreme Court's holding that "Congress legislates against the background of our prudential standing doctrine, which it applies unless it is *expressly* negated." *Bennett*, 520 U.S. at 163, 117 S.Ct. 1154 (emphasis added). The court notes also that this construction of Title III would not eliminate organizational standing altogether. An organization, like the plaintiff in *Innovative Health Systems*, that suffers direct discrimination by a public accommodation because of its relationship to or association with disabled persons has standing to sue

on the "broad language" of Title II's enforcement provision. *Innovative Health Systems*, 117 F.3d at 48 ("[B]ecause we have already determined that Title II provides relief to 'any person alleging discrimination,' it is irrelevant whether Title II directly proscribes discrimination based on association with disabled persons.").

2. The court notes that the Fair Housing Act ("FHA") has been fertile ground for litigation involving organizational plaintiffs asserting independent standing. The Supreme Court has analyzed the enforcement provision of the FHA, which, at the time of the Court's decision, was substantially broader even than the language of Title II of the ADA. That provision, which has been amended in the intervening time, stated that "[t]he rights granted

by sections 803, 804, 805, and 806 may be enforced by civil actions in appropriate United States district courts without regard to the amount in controversy and in appropriate State or local courts of general jurisdiction." 42 U.S.C. § 3612. Analyzing this language, the Supreme Court concluded that Congress intended standing to extend to the full limits of Article III. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 103, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) (finding that the statutory language "simply avoid[ed] the need for a direct reference to the potential plaintiff" and contained "no particular statutory restrictions on potential plaintiffs"). The language of the enforcement provision of Title III of the ADA is not nearly so broad.

under Title III. *See* 42 U.S.C. § 12182.[3] A plaintiff like DIA, however, which has suffered no direct discrimination but has only incurred any potential injuries as a result of discrimination against others, is provided no remedy by Title III of the ADA. While this construction results in a lack of consistency among the ADA's titles that has no apparent logic, in that prudential standing requirements apply under Title III but not under Title II, the court notes that Congress could have used the same language in the enforcement provisions of all three titles but chose not to do so. It is well-settled that when "Congress uses different language in different sections of a statute, it does so intentionally." *Florida Pub. Telecomm. Ass'n v. FCC*, 54 F.3d 857, 860 (D.C.Cir.1995) (collecting cases).

The court in *Clark v. McDonald's*, discussed above, reached substantially the same conclusion as that reached by the court in the instant case. 213 F.R.D. at 210. As noted, that court found, appropriately in this court's view, that the language of 42 U.S.C. § 12188(a)(1) erected a prudential barrier precluding organizational standing to organizations that are not suffering, or under threat of suffering, direct discrimination. *Id.* This conclusion finds support from the decisions of other courts holding that the enforcement provision of Title III does not alter prudential standing requirements, as well as decisions limiting the standing of non-disabled persons or entities under the ADA generally to those who have suffered direct discrimination because of their association with disabled persons. *See, e.g., Moreno v. G & M Oil Co.*, 88 F.Supp.2d 1116, 1117 (C.D.Cal. 2000) (concluding, as a matter of pruden-

tial standing, that the language of section 12188(a)(1) did not permit a plaintiff encountering architectural barriers at one gas station to assert claims on behalf of others similarly situated with respect to 82 other gas stations that the plaintiff had not visited); *Hoepfl v. Barlow*, 906 F.Supp. 317, 323 (E.D.Va.1995) ("Nothing in the language of either § 12188 or the cross-referenced § 2000a–3(a) suggests that it was intended to alter the normal prudential rules on standing."); *W.G. Nichols, Inc. v. Ferguson*, No. 01 Civ. A 834, 2002 WL 1335118, *15–16 (E.D.Pa. June 7, 2002) (assuming that Congress eliminated prudential standing requirements under the ADA but finding that Congress limited organizational standing under the ADA to those entities that had suffered direct discrimination as a result of their known association with disabled persons); *Micek v. City of Chicago*, No. 98 Civ. 6757, 1999 WL 966970, *3 (N.D.Ill. Oct. 4, 1999) (finding a discrimination claim based on association with disabled individuals to run afoul of prudential limitations on standing under Titles I and II of the ADA where plaintiff's injury was only indirect and plaintiff could not claim that he was himself "discriminated against or singled out in a discriminatory way due to [his] association with disabled persons"); *Baaske v. City of Rolling Meadows*, 191 F.Supp.2d 1009, 1015 (N.D.Ill.2002) (finding that courts have recognized "two main exceptions to the general rule that only disabled individuals may bring claims under Title II of the ADA," where either an association or an individual suffers direct discrimination based upon that organization's or that individual's association with disabled persons).

---

3. That provision provides:
 It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or enti-

ty because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

The regulations implementing Title III further support the conclusion that Congress intended organizations to have only limited independent standing under that Title. *See* 28 C.F.R. Pt. 36, App. B (1991) ("During the legislative process, the term 'entity' was added to section 302(b)(1)(E) [,42 U.S.C. § 12182(b)(1)(E),] to clarify that the scope of the provision is intended to encompass not only persons who have a known association with a person with a disability, but also entities that provide services to or are otherwise associated with such individuals. This provision was intended to ensure that entities such as health care providers, employees of social service agencies, and others who provide professional services to persons with disabilities are not subjected to discrimination because of their professional association with persons with disabilities.").

While the court finds that DIA lacks standing solely on the basis of this prudential standing analysis, the court notes that DIA may not satisfy, in any event, the Article III standing requirements. Specifically, although the court does not decide the issue, the court is not convinced that plaintiff DIA has suffered an "injury in fact." It is well-established that, because of the "injury in fact" requirement, an organizational plaintiff must demonstrate that it has more than simply "[an] abstract concern with a subject that could be affected by an adjudication [of the pending case]." *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). While having to divert scarce resources away from other organizational activities as a result of the challenged conduct may qualify as an injury that confers standing, *Havens Realty Corp. v. Coleman*, 455 U.S. at 379, 102 S.Ct. 1114, the circuits are not in agreement as to what satisfies the "injury in fact" requirement for organizational standing. *Id.* (finding that a "concrete and de-monstrable injury to the organization's activities-with the consequent drain on the organization's resources-constitutes far more than simply a setback to the organization's abstract social interests" and is a sufficient injury to establish standing). The D.C. Circuit and the Third Circuit have taken a narrow reading of *Havens*, finding that litigation expenses alone are insufficient to establish standing. *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C.Cir.1990) ("An organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit. Were the rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no real limitation."); *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 78–79 (3d Cir.1998). The Second Circuit has seemingly opted for the broader view that the opportunity cost of diverting resources away from other activities toward litigation, or other legal efforts to combat the challenged conduct, is a sufficient injury to confer standing on the organization on its own behalf. *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 905 (2d Cir.1993) (attaching importance to the fact that the organization had been forced to divert significant resources from counseling and referral services to the litigation) (citing *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526–27 (7th Cir. 1990) (holding that diversion of resources from core organizational activities to legal efforts supports standing)). District courts within the Second Circuit have interpreted *Ragin* in this way. *See, e.g., Brown v. Stone*, 66 F.Supp.2d 412, 426 (E.D.N.Y.1999); *Padberg v. McGrath–McKechnie*, 203 F.Supp.2d 261, 274 (E.D.N.Y.2002). At least one district court within the Second Circuit, however, has found that both *Havens* and *Ragin* are

limited to situations where the organization asserting independent organizational standing provided counseling, referrals, and other direct services that were impeded by the legal efforts. *National Congress for Puerto Rican Rights v. City of New York*, 75 F.Supp.2d 154, 165 (S.D.N.Y. 1999).

In the instant case, DIA asserts that it has devoted substantial organizational time and resources to its "One Step Campaign," a program designed to use personal persuasion and formal complaints to achieve removal of steps into public accommodations that prevent wheelchair users from entering. DIA acknowledges in its brief, however, that only one complaint has been filed under this campaign against GNC and that DIA has devoted approximately one and one-half hours toward GNC as part of this campaign. Plaintiff's Opposition Brief at 16–17. While plaintiff argues that the court should aggregate the opportunity cost of the "One Step Campaign" as a whole when considering whether DIA has organizational standing to bring suit against GNC, the court finds this argument troubling. In light of the *de minimis* character of the costs actually incurred by DIA with respect to GNC, the court is not certain that DIA could establish that it has suffered an "injury in fact" necessary for Article III standing. Moreover, even if the court were to read the Second Circuit's decision in *Ragin* to mean that litigation expenses are a sufficient injury in fact, the court is not certain that such an interpretation would compel a finding that DIA has suffered an injury in fact. DIA states that it initiates and joins lawsuits to enforce the ADA as part of its organizational mission. In light of this stated organizational purpose, the court would be reluctant to find that any litigation expenses incurred by DIA involved a diversion of organizational resources from core organizational activi-

ties toward legal efforts. *See National Congress for Puerto Rican Rights*, 75 F.Supp.2d at 165; *Burger King Corp.*, 255 F.Supp.2d at 344 (finding that an ADA advocacy organization had failed to show an impairment to its mission that would constitute an injury in fact and stating that, "absent evidence to the contrary, it appears that [the organization] is an organization whose primary purpose is ADA litigation"). The court acknowledges, however, that other courts have found similarly situated organizational plaintiffs to have stated an injury in fact. *McDonald's Corp.*, 213 F.R.D. at 208; *Hill v. Park*, No. 03 Civ. A 4677, 2004 WL 180044, *5 (E.D.Pa. Jan. 27, 2004) (permitting the organizational plaintiff an opportunity to amend its complaint to state particularized facts showing that it had diverted organizational resources from its core purposes to combat the discrimination of the public accommodation but expressing no position whether such an injury could support independent organizational standing).

### 2. *Associational Standing*

■■■ The Supreme Court has established a three-part test to determine whether an organization has "associational standing" to bring suit on behalf of its members. An association has such standing when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). Defendant argues that the court need not reach the *Hunt* test because Title III of the ADA does not permit associational standing. Defendant further argues that if the

court were to reach the *Hunt* analysis, DIA cannot satisfy its first and third prongs.

Defendant's first argument is clearly without merit. Defendant argues that the ADA does not permit organizations to bring suit in a representative capacity on behalf of their members. In support of its argument, defendant analogizes the language of the enforcement provision of Title III of the ADA to the language in the Fair Labor Standards Act ("FLSA") and the Family Medical Leave Act ("FMLA"). No basis exists, however, for believing that Congress intended the statutes to be analogous at all. There is overwhelming support in the case law for the conclusion that Congress intended the FLSA, most pertinently 29 U.S.C. § 216(b), to prohibit labor organizations from suing on behalf of their members. *United Food & Commercial Workers Union, Local 1564 of New Mexico v. Albertson's, Inc.*, 207 F.3d 1193, 1201 (10th Cir.2000); *State of Nevada Employees' Association. Inc. v. Bryan,* 916 F.2d 1384, 1391 (9th Cir.1990). In the only FMLA case cited by defendant, the court explicitly relied on corresponding statutory provisions in the FMLA and the FLSA to conclude that the statute precludes unions from asserting FMLA claims in a representative capacity. *New York Metro Area Postal Union v. Potter,* No. 00 Civ. 8538(RLE), 2003 WL 1701909, *2–3 (S.D.N.Y. March 31, 2003). By contrast, absolutely no support exists in the case law for the conclusion that Congress intended Title III of the ADA to prohibit associational standing. *See, e.g., Doe v. Stincer,* 175 F.3d 879 (11th Cir.1999) (finding that an ADA advocacy organization could have associational standing if it satisfied the *Hunt* test); *Hill,* 2004 WL 180044 at *6 (finding that the ADA advocacy organization had failed to plead satisfactory information to establish associational standing under the *Hunt* test); *Burger*

*King Corp.,* 255 F.Supp.2d at 345 (permitting the ADA advocacy organization the opportunity to amend its complaint, setting forth particularized facts supporting its standing to bring suit in a representative capacity); *McDonald's Corp.,* 213 F.R.D. at 216 (finding the ADA advocacy organization to have "satisfied its burden to plead associational standing on injunctive claims"); *Disabled Patriots of America, Inc. v. Lane Toledo, Inc.,* 325 F.Supp.2d 837 (N.D.Ohio 2004) (finding the ADA advocacy organization to have satisfied the *Hunt* test for associational standing); *Gregory v. Melrose Group, LLC,* No. 03 Civ. A. 2414, 2003 WL 22928805, *4 (E.D.La. Dec. 8, 2003) (finding that the ADA advocacy organization satisfied the *Hunt* test for associational standing); *Disabled In Action of Metropolitan New York v. Trump International Hotel & Tower,* No. 01 Civ. 5518, 2003 WL 1751785, *9–10, 2003 U.S. Dist. LEXIS 5145, *32–33 (S.D.N.Y. Apr. 2, 2003) (analyzing whether DIA had associational standing under the *Hunt* test).

 Defendant also argues that, in any event, DIA cannot satisfy the first and third prongs of the *Hunt* test. With respect to the first prong, defendant argues that DIA has failed to establish the standing of any DIA member. The court notes, preliminarily, that it may not consider plaintiff Small as a DIA member for purposes of its "associational standing" analysis. The Third Amended Complaint fails to state that Small is a DIA member. While the court may consider affidavits containing particularized facts supporting standing, *Thompson,* 15 F.3d at 249, the only affidavit submitted by plaintiffs does not state that Small is a DIA member. Plaintiffs have submitted a DIA membership list, which includes Small, but that list is dated January 5, 2005, well after the suit was filed. In any event, the membership

list was not listed as an appendix to plaintiffs' affidavit and cannot be considered by the court. As a result, the court may not consider Small as a DIA member for purposes of its "associational standing" analysis. *See Hill*, 2004 WL 180044 at *6 (finding that, because the complaint failed to plead that the individual plaintiff was a member of the ADA advocacy organization, plaintiffs had failed to identify him as a member whose interests would confer associational standing on the organization).

The only DIA member identified in the Third Amended Complaint is Anthony Trocchia, DIA's current president.[4] Third Am. Compl. ¶ 21. It is alleged that Trocchia "passes through the immediate vicinity of all corporate owned GNC stores located in Manhattan below 86th Street on a regular basis." *Id.* It is further alleged that Trocchia uses nutritional supplements, that he has purchased such items from GNC stores in the past, and that he will purchase such items from GNC stores in the future. The remainder of the Third Amended Complaint consists of general assertions that unnamed DIA members who use wheelchairs face barriers at GNC stores and that GNC has expended organizational resources, thought its "One Step Campaign," to remove the access barriers at GNC stores.

The court finds that plaintiffs have not identified a single DIA member whose interests would confer associational standing on DIA in the instant case. For the reasons stated in the analysis of plaintiff Small's standing with respect to all GNC stores other than that at 58 Court Street in Brooklyn, plaintiffs have not established Trocchia's standing. Plaintiffs have al-

leged neither an instance in which Trocchia actually encountered access barriers at a single GNC store nor, on a futile gesture theory, that he was actually aware of such barriers at any particular stores and would visit those stores in the imminent future but for the barriers. The court is not certain whether plaintiffs are unable to plead such facts, with respect to Trocchia or some other DIA member, or whether they simply have failed to do so. In the absence of such allegations, however, the court cannot find that DIA has satisfied the first prong of the *Hunt* test. As a result, the court cannot find that DIA has associational standing to sue GNC. The court will permit DIA a final opportunity to amend its complaint.

The court notes in this regard that district courts within the Third Circuit, where three factually similar cases have been decided, are conflicted as to the degree of specificity with which an organizational plaintiff must plead its case in order to demonstrate that its members would individually have standing to sustain suit against numerous stores forming part of the same chain. *Compare Burger King Corp.*, 255 F.Supp.2d at 345 (finding that an ADA advocacy group needed to identify its members, the dates on which they visited the defendant's allegedly discriminatory facilities, and that they planned to return to those facilities in order to establish associational standing) *with McDonald's Corp.*, 213 F.R.D. at 215–16 (finding that such specificity in the pleadings is an "exaggerated" pleading requirement). The court emphasizes that at the very least, if DIA can establish the standing of one of

4. Plaintiffs have submitted an affidavit from Irma Shore, a DIA member. The majority of Ms. Shore's affidavit addresses the expenditure of DIA's organizational resources on the "One Step Campaign." The affidavit does not state that Ms. Shore has ever experienced discrimination at GNC stores or that she has actual knowledge of an architectural barrier at any GNC store and would visit that store in the imminent future but for those barriers. Thus, the court will not consider Ms. Shore in its associational standing analysis.

its members in an amended complaint, DIA will have established associational standing. Its standing would only be coextensive with the standing that member would enjoy, however. Put differently, because associational standing exists only insofar as organization members have standing, associational standing may not be broader or more extensive than the standing of the organization's members. Thus, the association would only have standing with respect to the specific stores at which the member identified in the amended complaint has standing. The court will allow plaintiff a final opportunity to amend its complaint in order to establish associational standing by establishing the standing of at least one DIA member. If DIA seeks to have broader standing, encompassing more GNC stores than those against which the member identified in its amended complaint would have standing, DIA must submit affidavits from other DIA members stating the basis of their standing and identifying the stores where they encountered discrimination. To be clear, any such affidavit should indicate that the affiant experienced discrimination at a GNC store before this suit was filed or that he or she had actual knowledge of an architectural barrier to entry at a GNC store before the suit was filed and would visit that store in the imminent future but for the barrier. The court notes, finally, that defendants may challenge DIA's associational standing, or its breadth, at a later point in the litigation on a "factual" Rule 12(b)(1) motion or on a motion for summary judgment. *McDonald's Corp.*, 213 F.R.D. at 216; *Equal Access Educ. v. Merten*, 325 F.Supp.2d 655, 659 (E.D.Va.2004).

While the court need not reach the third prong of the *Hunt* test at this point, it finds, given that plaintiffs have already filed their Third Amended Complaint, that some guidance may be appropriate. Defendant argues that, to establish associational standing, DIA must present individual members who will identify their disabilities and the GNC stores at which they suffered discrimination. Defendant argues that this "person-by-person and store-by-store inquiry would necessarily require the participation of the individual members." Defendant's Brief at 16 (internal quotation marks and citation omitted). The court notes, preliminarily, that courts regularly consider affidavits when determining the existence of a plaintiff's standing, as the court will require of DIA members in the instant case. The court also notes that the Supreme Court has indicated that the individual participation of an organization's members is "not normally necessary when an association seeks prospective or injunctive relief for its members." *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996) (citing *Hunt*, 432 U.S. at 343, 97 S.Ct. 2434). This is not an invariable rule, however, perhaps particularly, in defendant's view, in cases like the instant one, where plaintiffs are seeking injunctive relief and members' participation would be required to establish the breadth of associational standing.

Defendant cites several cases in which courts have found organizational plaintiffs seeking injunctive relief under the ADA to have failed to satisfy *Hunt's* third requirement. Those cases, however, are not particularly instructive. In *Concerned Parents to Save Dreher Park Center v. City of West Palm Beach*, 884 F.Supp. 487 (S.D.Fla.1994), the court simply stated, without analysis, that the organization could not meet the third prong because "any finding of an ADA violation requires proof as to each individual claimant." *Id.* at 488. In *Association for Disabled Americans, Inc. v. Concorde Gaming Corp.*, 158 F.Supp.2d 1353 (S.D.Fla.2001), the court

reached the same conclusion, similarly without analysis, citing *Concerned Parents. Id.* at 1363–64. Other courts have determined that an organization may satisfy all three *Hunt* requirements in a case challenging architectural barriers as violating Title III of the ADA. *See, e.g., McDonald's Corp.,* 213 F.R.D. at 215; *Gregory,* 2003 WL 22928805 at *4. The court finds persuasive the analysis in *Clark v. McDonald's Corp.,* in which the court determined that the existence of ADA violations, while requiring a fact-intensive inquiry, "would not appear to require *any* testimony by [organization] members." 213 F.R.D. at 214. The court recognizes that it has directed DIA that, in order to seek injunctive relief against the GNC stores named in the Complaint on a theory of associational standing, it will have to submit an affidavit from at least one member establishing standing as to each store against which DIA seeks relief stating that he or she had suffered actual discrimination or, under a futile gesture theory, that (1) he or she is disabled, (2) he or she has "actual notice" of the architectural barrier, and (3) he or she would visit that store in the imminent future but for that barrier. Thus, plaintiff will undoubtedly be required to involve at least a few of its members if it is to sustain its associational standing claim. The court finds persuasive, however, the Third Circuit's analysis of the third *Hunt* prong in *Hospital Council of Western Pennsylvania v. City of Pittsburgh,* 949 F.2d 83 (3d Cir.1991). In that case, the court interpreted the *Hunt* requirements to paraphrase the Supreme Court's earlier, more detailed statement in *Warth v. Seldin. Id.* at 89 (citing *Warth,* 422 U.S. at 511, 95 S.Ct. 2197). In *Warth,* the Court wrote:

[S]o long as the nature of the claim and of the relief sought does not make the individual participation of *each injured party indispensable* to proper resolution of the cause, the association may be an appropriate representative of its members entitled to invoke the court's jurisdiction.

*Warth,* 422 U.S. at 511, 95 S.Ct. 2197 (emphasis added). Based on the language in *Warth,* the Third Circuit concluded that the *Hunt* test's third prong does not prohibit all individualized participation of organization members. The Third Circuit further concluded that under the *Hunt* test, where participation by "each [allegedly] injured party" would not be necessary, associational standing is appropriate. *Hospital Council of Western Pennsylvania,* 949 F.2d at 90. The court thus finds that, at this stage in the litigation, if plaintiff can satisfy the first *Hunt* prong by identifying a DIA member with standing, plaintiff DIA should be given the opportunity to submit affidavits from its members to establish the scope of its associational standing. *See McDonald's Corp.,* 213 F.R.D. at 215 (permitting the organizational plaintiff to move ahead with the litigation despite the need for members to establish the breadth of associational standing and to attempt an approach that would limit the involvement of its members in the litigation through "sample testimony").

## II. *Class Action*

Defendant argues that the class cannot be certified because plaintiffs cannot satisfy the commonality, typicality, and numerosity requirements of Rule 23(a). Defendant also argues that the class should not be certified because it is unnecessary. Plaintiff has not yet, however, moved to certify the class.

 While courts typically determine whether to certify a class by considering a plaintiff's motion for certification, a defendant need not wait for the plaintiff to act and may, in fact, move preemptively for an

order denying class certification. *Fedotov v. Peter T. Roach & Assoc., P.C.*, 354 F.Supp.2d 471, 477 (S.D.N.Y.2005) (citations omitted). Inexplicably, plaintiffs did not address defendant's class action arguments in its Opposition Brief. Nonetheless, the court will not address the question of class certification, and particularly the requirements of Rule 23(a), at this point. The court directs plaintiffs to submit papers in opposition to defendant's motion to deny class certification. Those papers should include affidavits, declarations, or any other evidence that would normally be submitted in support of a motion for class certification pursuant to Rule 23. As the moving party, defendant will have an opportunity to reply. *Id.* at 478.

### III. *State Law Claim*

Plaintiffs' Third Amended Complaint includes a claim under N.Y. City Admin. Code § 8–107(4)(a). Section 8–107(4), a cognate provision of Title III of the ADA, makes it unlawful for the owner of any public accommodation to deny to any disabled person the advantages of that accommodation on account of the disability.[5] Defendant argues that the court should not exercise pendent jurisdiction over this claim because plaintiffs lack standing to bring suit under the ADA. Because the court finds that plaintiff Small has standing under the ADA with respect to one GNC store, it determines that there is reason to believe it should exercise pendent jurisdiction over plaintiff Small's state law claim.

### CONCLUSION

For the foregoing reasons, the court grants defendant's motion and dismisses with prejudice plaintiff DIA's claim of organizational standing. With respect to DIA's associational standing claim, defendant's motion is granted. DIA's associational standing claim is dismissed without prejudice, provided that DIA may move to amend its complaint within twenty (20) days of the date of this order. DIA's amended complaint must allege with specificity, with respect to at least one GNC store, at least one member who experienced discrimination before the date this suit was filed or who, under a futile gesture theory, is disabled, had actual knowledge of an architectural barrier at a GNC store before this suit was filed, and would visit that store in the imminent future but for the barrier. If DIA files an amended complaint, it must submit any accompanying affidavits from DIA members to establish standing with respect to other GNC stores within forty (40) days of the date of this order.

With respect to plaintiff Small, defendant's motion is denied in part and granted in part. Regarding Small's standing with respect to the GNC store at 58 Court Street in Brooklyn, defendant's motion is denied. Regarding Small's standing with respect to other GNC stores, defendant's motion is granted. Small's claim against these stores is dismissed without prejudice, provided that he may move to amend the complaint within twenty (20) days of the date of this order. Finally, the court defers ruling on defendant's motion to deny class certification.

SO ORDERED.

---

5. While the claim appears to be wholly duplicative of plaintiffs' claim under the ADA, the issue has not been addressed fully by the parties.